## CITY OF LOWELL vs. HENRY K. OLIVER.

The *St.* of 1863, *c.* 218, providing for the reimbursement of bounties paid by cities and towns to volunteers, and apportioning and assessing a tax therefor, will not be declared invalid on the ground that the tax which it imposes is disproportionate and unequal, or that the sums to be raised under the same are to be unequally distributed among cities and towns, or that the legislature have no authority to raise money by taxation for the payment of bounties to soldiers of the United States, or to reimburse bounties already paid to them by cities and towns, or that it is apparent from the statute itself that the legislature did not intend that a tax should be levied under it.

This court cannot say that a city or town may be excused from levying a tax according to the requirement of *St.* 1863, *c.* 218, on the ground that an insufficient time was allowed for the assessment and collection thereof, although the warrant for the tax was not received from the state treasurer until the ordinary taxes of such city or town had been assessed and committed to its treasurer for collection.

Under Gen. Sts. *c.* 15, § 32, the governor may instruct the state treasurer to withhold the payment of a portion of a sum of money due to a city or town, after he has, with the advice of the council, executed and delivered to the treasurer a warrant for the payment thereof, if such city or town illegally withholds money due to the Commonwealth.

MANDAMUS, reciting that the city of Lowell, by their petition, had given the court to understand that under and by virtue of *Sts.* 1861, *c.* 222 ; 1862, *c.* 66 ; and 1863, *c.* 79, they had raised by taxation and otherwise and paid the sum of $83,000 to the wives, children, parents, brothers and sisters, dependent upon those who had been duly enlisted and mustered into the volunteer service of the United States, and in all respects complied with said several statutes, and made return of the moneys paid, according to law; that by *St.* 1863, *c.* 250, an appropriation was made to reimburse the cities and towns of the Commonwealth for moneys paid to their inhabitants under said statutes ; that the sum of $83,000 was due and payable to the city of Lowell for the moneys so paid by them, and was in the hands of the respondent, as treasurer and receiver general of Massachusetts ; that the city had demanded payment thereof, which had been refused ; and that the city did not owe any sum to the Commonwealth. The writ ordered the respondent to make payment of said sum, or show cause to the contrary.

The answer of the respondent set forth that it is not within the jurisdiction of the court to compel him to pay money of the Commonwealth out of the treasury thereof; that the Commonwealth does not owe said sum of $83,000 to the city of Lowell, but said city has an unadjusted account with the Commonwealth, and the governor has instructed the respondent to withhold all payments of money to them while they continue to withhold money from the Commonwealth, unless they would be content to receive the balance due upon an adjustment of all debts and credits, to wit, $61,356.83, which sum the respondent has offered and is ready to pay ; that by *St.* 1863, *c.* 218, passed April 29th 1863, a tax was duly assessed upon the several cities and towns of the Commonwealth, amounting in all to $3,413,751.83, of which sum $80,543.17 was duly apportioned to the city of Lowell, and a warrant was thereupon issued by the respondent and sent, with a copy of the statute, to the assessors of Lowell, requiring them to assess the sum so apportioned to them, and to add the amount to the amount of town and county taxes to be assessed by them on said city, and to

City of Lowell *v.* Oliver.

pay, or to issue their warrant requiring their city treasurer to pay, the said sum to the respondent, on or before the 1st day of December 1863; but said city have refused to pay the same, alleging that the tax was unconstitutional; and, because of said refusal, the respondent, under the instructions of the governor, has declined to pay the sum which the city now seek to obtain.

A replication was filed, setting forth, among other things, that the sum claimed of the city, under the tax provided for by *St.* 1863, *c.* 218, is about $21,500, and that said tax and statute are illegal, unconstitutional and void, because the cities and towns of the Commonwealth were not authorized to pay the bounties sought thereby to be equalized; because said bounties, varying from fifty to five hundred dollars in the several cities and towns, were not thereby equalized, and cannot be made valid by legislative enactment; and because the city of Lowell, having raised her full quota of men for nine months by the payment of a bounty of fifty dollars to each, is by said statute compelled to pay the sum of fifty dollars for each man to other cities and towns of the Commonwealth.

In addition to the facts stated in the writ, answer and replication, it was agreed that the city of Lowell furnished its full quota of troops under the calls of the president of the United States issued in July and August 1862, and paid a bounty to them of about $48.25 each; that the average bounty paid by all the cities and towns in the Commonwealth was about $133.13 to each man; that the bounty reimbursed to the cities and towns under *St.* 1863, *c.* 218, was about $99.03 per man; that the warrant for taxation under said statute was received by the city of Lowell on the 8th of September 1863, which was after its taxes for that year had been assessed and made out; that on the 1st of December 1863 the governor, with the advice and consent of the council, drew his warrant for $1,762,322.18, in pursuance of the several statutes above referred to, to be paid to the several cities and towns, and that said warrant is now on file in the respondent's office; that the respondent thereupon credited the several cities and towns with the respective amounts due to them out of said sum, the city of Lowell being credited

with the sum of $83,000, which sum now stands to their credit upon the roll; that he has paid to all of the cities and towns except Lowell the sums so credited to them, and all of the cities and towns except Lowell have paid all balances due from them to the Commonwealth; that the only instruction given by the governor to the respondent to withhold money from Lowell was dated December 22d 1863, and was in these words : " In conformity with the legal opinion of the attorney of the Commonwealth, let the treasurer of the Commonwealth pay to the city of Lowell the aforesaid balance only, unless either by judicial decision or legislative authority it shall be otherwise determined ; " and that the respondent refused to pay to Lowell the sum of $83,000, or any part thereof, unless the city would deduct therefrom the sum of $21,643.17, alleged to be due from the city to the Commonwealth on account of the tax imposed by *St.* 1863, *c.* 218.

It was also agreed that copies of the president's proclamations and calls for troops, and of the orders of the governor concerning the same, might be referred to.

*T. Wentworth,* for the relators.

*Foster,* A. G., for the respondent.

BIGELOW, C. J.   We have not deemed it necessary to determine the preliminary question, whether a writ of mandamus is a proper remedy, which this court has power to enforce against the respondent in his official capacity, for the purpose of redressing a grievance like that which is set forth in the petition of the relators.   The main questions at issue between the parties have been very fully and ably discussed at the bar.   We have given to them very careful consideration, and, having arrived at conclusions which are decisive of the merits of the case, we have not stopped to discuss a question which is immaterial to the final disposition of the cause.

The ground on which the relators put their claim to relief is in substance, that they are entitled to receive from the respondent, as treasurer of the Commonwealth, the full sum of eighty-three thousand dollars, being the amount or proportion due to them for moneys advanced in aid of the families of persons,

inhabitants of Lowell, who had enlisted and been duly mustered into the military service of the United States; that this sum is due to them under the several acts of the legislature set out in the writ, as appears by the roll kept by the respondent, in which the relators are credited therewith as their share of the whole sum to be paid and distributed among the several towns and cities of the Commonwealth, according to a warrant of the governor drawn on the first day of December last. The right of the relators to receive this sum is denied by the respondent, on the ground that there is due to the Commonwealth from said relators and unpaid by them the sum of about twenty-two thousand dollars, being the balance due from said city of the tax apportioned to and to be assessed by said city for the reimbursement by the Commonwealth of bounties paid by cities and towns to volunteers under *St.* 1863, *c.* 218, after deducting the amount of reimbursement to which said city is entitled according to the provisions of the same act; that the Commonwealth has a right to deduct from the sum of eighty-three thousand dollars, due to said city as aforesaid, the above balance of about twenty-two thousand dollars; that this right is denied by the relators; that there is, by reason of such conflicting claims, an unadjusted account between said relators and the Commonwealth, within the meaning of Gen. Sts. *c.* 15, § 32, and that the governor of the Commonwealth, having received satisfactory information that said sum of about twenty-two thousand dollars is illegally withholden from the state by said relators, has instructed the respondent to withhold all payments of money to them, in pursuance of the provisions of the statute last cited.

To the answer of the respondent, setting out these grounds of defence to the claim of the relators, they reply that it shows no valid or legal excuse for the refusal of the respondent to pay them the sum to which they are entitled for aid furnished to the families of volunteers, and they allege various reasons on which they rely and insist to show the insufficiency of said answer and the validity of their claim. The first and most important one is, that the provisions of *St.* 1863, *c.* 218, directing an apportionment and assessment of a tax to and among the several

cities and towns of the state for the reimbursement of bounties paid by them to volunteers are unconstitutional and void, and that no claim can be justly made on them by the respondent in behalf of the Commonwealth for any portion of said tax. In considering this grave objection to the statute, it is necessary to have distinctly in mind that by the constitution the right to impose and levy taxes is vested in the legislature in very broad and comprehensive terms. The framers of that instrument were not unmindful of the necessity of providing that the government which they were about to establish should possess, within the sphere in which it was designed to operate, those powers which are essential to sovereignty, and to vigorous and efficient action. They were also well aware, by the experience through which they had passed, that the power of imposing taxes, though inherent and necessary as a means of supporting and carrying on a government, was a difficult and delicate one, always regarded with jealousy by those on whom it is to be exercised, and concerning which there should be clear and explicit provisions in the frame of government, in order that there should be no doubt or dispute, either as to the existence of the power or as to those to whom the authority to use it was delegated. It was therefore deemed important to declare, among the fundamental principles on which the government was to be based, that " no subsidy, charge, tax, impost, or duties ought to be established, fixed, laid or levied, under any pretext whatsoever, without the consent of the people or their representatives in the legislature." Declaration of Rights, art. 23. The right thus recognized and declared was secured by a corresponding provision in the frame of government. In creating and establishing the legislative department, it is provided, among other things, that full power and authority are given and granted to the general court " to impose and levy proportional and reasonable assessments, rates and taxes upon all the inhabitants of, and persons resident and estates lying within the said commonwealth ; . . . . to be issued and disposed of by warrant under the hand of the governor of this commonwealth for the time being, with the advice and consent of the council, for the public service, in the necessary

defence and support of the government of the said common-
wealth, and the protection and preservation of the subjects
thereof, according to such acts as are or shall be in force within
the same." And it is further provided that, " in order that such
assessments may be made with equality, there shall be a valua-
tion of estates within the Commonwealth, taken anew once
in every ten years at least, and as much oftener as the general
court shall order." Const. of Mass. *c.* 1, § 1, art. 4; § 2, art. 2.
From these provisions, it is apparent that the power of the leg-
islature as to the imposition of taxes is clearly defined, and that
the delegation of authority, although very full and ample, and,
from the nature of the subject matter, expressed in general terms,
is nevertheless subject to restrictions, which are embraced under
three heads or divisions. The first is, that the taxes imposed
must be proportional and reasonable ; the second is, that they
must be laid according to a valuation of all estates in the Com-
monwealth, made within the current decade ; and the third and
last is, that they shall be levied for objects which are within the
general purposes enumerated in the clause of the constitution
already cited, for which public money may properly be ex-
pended.

We do not think it material, in the present case, to inquire
how far it is competent for the judicial department of the gov-
ernment to interpose its authority to prevent the collection or
payment of a tax, on the ground that the legislature in imposing
it have transcended the limits within which it is empowered by
the constitution to act. It may be questionable whether some
of the restrictions which the constitution imposes are not in their
nature directory, designed as a guide for the discretion of the
legislature, and not as an absolute limitation on its powers.
For example, is it within the province of this court to decide
whether a tax is reasonable, and, if in their judgment it is not,
to overrule the action of the legislature, and declare the statute
imposing it unconstitutional and void ? Could such a power
be exercised without trenching on another explicit provision of
the constitution, that the judicial department shall not exer-
cise legislative powers ? Declaration of Rights, art. 30. But

waiving these and other similar questions, the answers to which are not material to the decision of the present case, and assuming that this court has the power to afford a remedy to the relators, if their alleged grievance is well founded, we have only to inquire whether the statute in question is obnoxious to the objections urged against it, as being an unauthorized and invalid exercise of the power of taxation intrusted to the legislature The tax which it imposes certainly cannot be said to be disproportionate or unequal. It is imposed in exact accordance with the provisions of the constitution and laws. It is levied on all the polls and estates in the Commonwealth, according to the last decennial valuation, in the same manner as the aggregate of the annual state tax is apportioned for the current year. And it is now conceded by the learned counsel for the relators, that the respondent has calculated with fidelity and accuracy the several sums for which each city and town is liable to assessment on the basis prescribed by the statute. Where then is the inequality or disproportionate assessment of which the relators complain ? If we understand the argument on this point urged in behalf of the relators, the objection is not that the tax was not apportioned and laid in a proper and legal mode, but that the money which is to be raised by means of the tax is not to be distributed or paid out of the treasury of the Commonwealth among the several towns proportionally or equally; in other words, that it is to be disbursed neither according to the valuation of the property in the several towns, nor yet according to population, but that the basis of distribution is the number of enrolled soldiers enlisted as volunteers from each town in the service of the United States under the calls of the president issued in July and August 1862; and that even on this basis the distribution of the money is unjust and unequal, because the several towns do not receive the same sum for each enrolled soldier furnished by them, but only the amount of bounty actually paid to such soldier, and not even that, if it exceeds one hundred dollars. Conceding that this is a true statement of the mode of distribution of the proceeds of the tax, as prescribed by the act, we are at a loss to see in what way this alleged

inequality of distribution affects the validity of the tax itself. We know of no provision either in the constitution or laws which requires payments to be made from the public treasury according to any principle of apportionment or equality. If the tax is duly apportioned and levied, and the purpose for which the money is raised is within the purview of the objects enumer‧ ated in the constitution, for which the funds in the treasury may be drawn out and expended, there is certainly no violation of any restriction, either express or implied, on the power of the legislature. On the contrary, within the sphere of action prescribed by the constitution, the authority of the legislature is supreme. The mode or amount of appropriation of public money for legitimate objects is exclusively a matter of legislative discretion, which can neither be regulated nor controlled by the judicial department of the government.

This brings us to a consideration of another objection to the validity of the tax in question, which has been suggested by the learned counsel for the relators. Starting with the admitted proposition that the disposition of money raised by the legislature by means of a tax is expressly limited by the provision of the constitution already cited, c. 1, § 1, art. 4, the relators insist that the proceeds of this tax are not appropriated for a purpose which comes within the fair scope of this provision. If this be so, then it is also true that the money which the relators seek to recover of the Commonwealth, and by means of these proceedings are endeavoring to have the respondent commanded to pay over to them, has been unlawfully appropriated by the legislature, in violation of the same clause of the constitution as that on which the relators rely to establish the invalidity of the disposition of the proceeds of the tax which they refuse to pay. It certainly needs no argument to sustain the proposition that, if it is an excess of authority in the legislature to appropriate money raised by taxation for the payment of bounties to volunteers enlisted in the service of the United States, or to reimburse towns and cities for such bounties advanced by them, a fortiori, the payment of money from the public treasury in aid of the support of the families of such volunteers, or to refund

to towns and cities the sums advanced by them for such pur-
pose, is unlawful and without authority.

But it is not necessary to put this part of the case on so nar-
row a ground. The objection on which the relators insist is
open to a more comprehensive and decisive answer. The use
of the money to be raised by the tax in question for the pur-
pose for which it is appropriated by the statute is within the
letter of the constitution, as well as its spirit. It is in the strict-
est sense a disposition of the money " for the public service, in
the necessary defence and support of the government of the
said commonwealth, and the protection and preservation of the
subjects thereof." These words are not to be interpreted with
reference merely to the reciprocal duties and obligations subsist-
ing between the government of the state as established by the
constitution of Massachusetts, and the people of the Common-
wealth as the subjects of that government. By the ratification
and adoption of the constitution of the United States, a portion
of the allegiance which each citizen originally owed exclu-
sively to the government of the state was transferred to that
of the United States. The government and people of the state
became thereby bound to defend and support the national gov-
ernment, and to bear their part or proportion of the burden of
" protecting and preserving " it from the assaults of domestic
foes as well as of foreign enemies. To the extent of the new
relation thus created and the new duties and obligations thus
assumed, the provisions of the constitution must be deemed to
have been modified and changed, in order that the two govern-
ments, each supreme within its appropriate sphere of action,
might be adapted to each other and work harmoniously together.
No one can doubt that it would have been competent for the
legislature to expend money raised by taxation for the purpose
of supporting and defending the government of the state
against treason and rebellion, while the whole sovereignty was
vested in it under the constitution of Massachusetts. It cer-
tainly cannot be deemed to be an excess of authority or an
illegitimate use of the public moneys, to appropriate them to
the preservation and protection of the government to which a

portion of that sovereignty has been transferred, against similar attempts to weaken and destroy it.

Nor do we see any force in the suggestion that the appropriation of the money raised by the tax in question was unlawful or unauthorized, because it was designed to reimburse payments already made by towns and cities, and not for the purpose of meeting present exigencies or discharging prospective liabilities of the Commonwealth. If the object of the appropriation is a legitimate one, it is quite immaterial whether the money has been actually expended and the tax is laid to pay a debt previously incurred or for the reimbursement of sums advanced by third persons for a public object, or whether it is to anticipate expenditures which the future requirements of the public service may render expedient or necessary. We can see no valid distinction in principle between a right to raise money for a specific object yet to be accomplished, and a right to raise it to defray the expense of the same object after it has been attained.

To the further objections urged by the relators to the validity of the tax, that it is apparent that the legislature did not intend that any tax should be levied under the statute, and that in effect the provisions of the act are designed only to declare that a certain class of towns is indebted to a certain other class, it is a sufficient answer to say that these grounds of objection are not only contrary to the letter of the statute and its clear and explicit enactments, but that they can be supported only by imputing to the legislature a want of good faith and fair dealing for which we can see no warrant whatever.

Two objections of minor importance were urged in behalf of the relators in support of their claim to a writ of mandamus, which may be briefly disposed of. One is, that it was impossible to add the tax, which the statute imposed, to the county and city taxes for the year 1863. But the facts disclosed do not support this objection. It only appears that the county and city taxes had been made up and committed to the treasurer of the city for collection. It is not shown, however, that he had taken any steps to collect those taxes, nor that the warrant to him might not have been recalled for the purpose of adding the

tax which the relators were directed to levy by the warrant of the treasurer of the Commonwealth in pursuance of the provisions of the statute. It is also alleged that the time allowed to the assessors of the city of Lowell for the assessment and collection of the tax in question was unreasonable and insufficient. No facts are shown which sustain this allegation. We cannot judicially know that the time between the receipt of the warrant from the treasurer of the Commonwealth and the day when the tax was due and payable to the state was not amply sufficient for its assessment and collection.

The only remaining objection is, that the respondent was not justified in withholding from the relators payment of the full sum demanded by them, under the instructions of the governor. This objection is put on two grounds. The first is, that no authority is vested in the governor to give such instructions to the treasurer of the Commonwealth after a warrant has been drawn by the governor with the advice and consent of the council, and delivered to the treasurer. But such power is expressly conferred on the governor by Gen. Sts. *c.* 15, § 32, wherever there is an unadjusted account between the Commonwealth and the person claiming money from the treasury. The exercise of this authority thus vested in the governor does not give him the power to set aside the warrant of the governor and council. That remains in full force. The effect of the instruction which the governor is authorized to give is only that the sum due from any person to the Commonwealth shall be taken in payment of the amount due to him under such warrant. The statute merely provides for an equitable adjustment of claims due to and from the Commonwealth.

The other ground is, that the governor is authorized only to direct the treasurer to withhold all payments of money to any person with whom the Commonwealth has an unadjusted account, and that this authority was not duly exercised in the present case, because the order from the governor only directed the treasurer to withhold from the relators the amount due to the Commonwealth, and to pay to them the balance after deducting that sum. But the greater includes the less. An

authority to instruct the treasurer to withhold an entire sum includes the power to retain a portion of such sum. But were it otherwise, in the exercise of our discretion we should certainly refuse to interfere by mandamus to order the respondent to pay over to the relators the entire sum which they claim, in a case in which it is made satisfactorily to appear that they are not justly entitled to receive it.

Upon the whole case, confining the expression of our opinion to the grounds of objection to the validity of the tax urged by the relators, our judgment is that they are not entitled to the writ.                               *Peremptory mandamus refused.*