## Weber *versus* Reinhard and Eisenhard, Supervisors, &c.

1. An act (April 14th 1868) provided that in addition to taxes then collectible, owners of ore-beds in Saucon township should pay to the supervisors 1½ cents for every ton of ore mined and carried away with teams over the roads in the township, to be paid at the end of each six months and in default of payment to be collected as debts of like amount.    *Held,* that the act is constitutional.

2. The court cannot pronounce a tax unconstitutional on the mere ground of injustice and inequality.

3. The owner of the land had leased it for a term of years: *Held,* that he and not the lessee was liable for the tax.

4. *Durach's Appeal,* 12 P. F. Smith 491 ; *Hammett v. Philadelphia,* 15 P. Smith 146 ; *Washington Avenue,* 19 P. F. Smith 352, followed.

March — 1873.    Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Lehigh county:* No. 71, to July Term 1871.

This case was commenced March 5th 1870, before a justice of the peace, at the suit of James Reinhard and Benjamin Eisenhard, supervisors of Upper Saucon township, against Charles B. Weber, for the recovery of taxes imposed by the Act of April 14th 1868 (Pamph L. 1127).

The act provides : " That in addition to the taxes collectible under existing laws, the owner or owners of ore-beds, situated in Upper Saucon township, Lehigh county, shall from and after the

[Weber *v.* Reinhard.]

passage of this act, pay to the supervisors of the roads in said township one and a half cent for each and every ton of ore mined and carried away with teams over the public road, in said township, which said payments shall be made at the end of every six months after the passage of this act; and in default of payment the same to be collected as debts of like amount are collectible by law; Provided, That the said supervisors shall appropriate to the same purpose, and render an account in the same manner for the funds coming in their hands under this act, as they are required by law with respect to other funds coming to their hands by virtue of their office."

The plaintiff's claim was for iron-ore carted from the ore-beds of defendant over the public roads in said township, to wit: $37.02 for ore so removed up to October 14th 1868, and $38.08 for the same from October 14th 1868 to October 14th 1869, with interest, together amounting to $78.82. The justice entered judgment for the plaintiffs for $78.82, and the defendant appealed to the Court of Common Pleas.

The plaintiffs then filed an affidavit of claim, referring to the above-given Act of Assembly and averring that "the defendant is the owner of an ore-bed situated in said township; that since the passage of said act there has been mined and carried away with teams over the public roads in said township, from the ore-bed of said defendant, the following quantities of iron ore during the times following, to wit: From April 14th 1868, to October 14th 1868, inclusive, 2468 tons 13 cwt.; from October 14th 1868 to October 14th 1869, inclusive, 2539 tons 13 cwt.; that the tax on the first-mentioned quantity (2468 tons 13 cwt.) at 1½ cents per ton, is $37.02, and upon the last-mentioned quantity (2539 tons 13 cwt.) is $38.08; that the tax due as aforesaid, after the same became due and before the bringing of this suit, was duly demanded by said plaintiff of said defendant, but that the said defendant has neglected and refused to pay the same or any part thereof; that the sums aforesaid, with interest from the time when they respectively became due as aforesaid, to date (May 14th 1870), to wit, seventy-nine eighty-five hundredth dollars (79.85), is now due and owing in manner aforesaid by said defendant to said plaintiff."

The defendants put in the following affidavit of defence : * * *

"An act was passed by the legislature of Pennsylvania, and approved April 14th 1868, entitled ' An act authorizing the supervisors of Upper Saucon township, Lehigh county, to collect an additional road tax on ore beds,' enacting that the owners of ore beds in said township shall pay to the supervisors therein one and a half cent. for each and every tone of ore mined and carried away with teams over the public roads in said township. Said defendant is the owner of an iron ore-bed in said Upper Saucon

[*Weber v.* Reinhard.]

township, which he has let to the Bethlehem Iron Company by article of agreement dated August 18th, A. D. 1864, and said ore-bed has been ever since and is now, worked by said company, under said lease or article of agreement; said iron company mine and cart away all the ore raised from the ore-bed on said farm, and the said defendant does not mine or cart away any of the ore, nor does he keep or own any teams or wagons or horses for the purpose of carting ore from said ore-beds. The farm owned by said defendant in which said ore-bed is situated, and said ore-bed are already separately assessed and taxed as follows: Said farm is valued for the purpose of taxation at $4825, and said ore-bed at $3000. The taxes due and to be paid are as follows: Road tax on farm $19.30, on ore-bed $12; school tax on farm $14.47, on ore-bed $9; county tax on farm $24.12, on ore-bed $15. According to the terms of said agreement with the said The Bethlehem Iron Company, said defendant has no control whatever over said ore-bed, but the same has been leased to the said iron company for a period of twenty years, and the term of said lease has not yet expired; that at and before the time of bringing of this suit, said ore-bed was and is now under the sole control, management and ownership of the said Bethlehem Iron Company, who dig, mine and cart away all the ore that is taken away therefrom.

"And further, said Act of Assembly, by virtue of which said tax is assessed, is null and void, because it is in violation of the Constitution of the United States and of the state of Pennsylvania."

The court (Longaker, P. J.) directed judgment to be entered against the defendants, for want of a sufficient affidavit of defence, for the amount of the plaintiffs' claim with costs.

This was assigned for error by the defendant on the removal of the record to the Supreme Court by writ of error.

*E. J. More* and *Woodward*, for plaintiff in error.—This imposition is an excise rather than a tax. There is no *provision* for assessment, and no provision for appeal from an assessment however arbitrary. If an excise, it cannot be enforced; if a tax it is so unequal and unjust, and its mode of enforcement so uncertain the courts will refuse to carry it out: Philadelphia Association *v.* Wood, 3 Wright 73; Durach's Appeal, 12 P. F. Smith 491.

*E. Albright*, for defendants in error.—In taxing, things may be classified, and if the tax is on all of a class it may be composed of one or many: Durach's Appeal, *supra*. He cited also Sharpless *v.* Philadelphia, 9 Harris 147; Speer *v.* School Directors, 14 Wright 150; Pittsburg and C. R. R. *v.* Commonwealth, 16 P. F. Smith 73.

[Weber v. Reinhard.]

The opinion of the court was delivered, March 24th 1873, by

SHARSWOOD, J.—Hammett v. Philadelphia, 15 P. F. Smith 146, was twice argued, each time before a full bench, and was a well-considered case. The principle of it has since been reaffirmed in Washington Avenue, 19 P. F. Smith 352. It did not question the constitutional right of the legislature to confer upon muni-·cipal corporations the power of taxing properties benefited by local improvements for the cost of making or maintaining them, but placed upon it the just and salutary restriction that it should be limited to the special benefits conferred by the improvements, and not extend beyond them; that the legislature could not authorize a tax to be levied on particular property in a designated locality for a general purpose, to which the whole community ought equally to contribute. Such a tax was in effect only a mode of taking private property for public use without making compensation. An examination of the facts will evince that the judgments in those cases have this extent—no more. The opinion in Hammett's case had been published immediately after the first argument, though not reported until after the second. It was cited, and was the main reliance of the appellant in Durach's Appeal, 12 P. F. Smith 491, which settled, however, the principle which seems to us to be decisive of the main question raised on this record, to wit, the constitutionality of the tax imposed upon the owners of ore-beds in Upper Saucon township, Lehigh county, by the Act of Assembly of April 14th 1868 (Pamph. L. 1127). It was there held that while the legislature cannot, under the name of taxation, take private property for public use without compensation, and that therefore a special tax on individuals or particular properties would be unconstitutional, yet in the exercise of the power of taxation, persons and things may be legitimately classified—some kinds may be assessed and others not—and that even special exemptions are not unconstitutional. There is no provision in the Constitution that taxation shall be equal. Sound policy requires that it should be so as far as possible. But perfect equality is not possible. Indeed, if this were necessary there could be no taxation, except such as would include every person and every thing, which would manifestly be impracticable and unjust.

It is gravely contended, however, that this court has the power to set aside unjust, unequal and improper legislation relating to taxation, and Philadelphia Association v. Wood, 3 Wright 73, is relied on as establishing this position. There are many things contained in the opinion in that case entirely aside from the point decided, and therefore mere *obiter dicta*. All that was determined was that an Act of Assembly which required all agencies for foreign insurance, trust and annuity companies in the city of Philadelphia to pay two per cent. of their gross premiums to an association for the relief of disabled firemen, was not taxation at

[Weber *v.* Reinhard.]

all ; it was taking the property of A. and giving it to B., whether for a charitable or any other mere private purpose it mattered not. No doubt after money raised by taxation has reached the public treasury it may be appropriated by the legislature to charities or individuals.   It was admitted, indeed, that the tax in that case would be clearly constitutional, if it had been levied for and paid into the public treasury, and the idea that the court could pronounce a tax unconstitutional on the mere ground of injustice or inequality was expressly repudiated.

It has been urged, however, grounded upon an opinion expressed by Chief Justice Lowrie, in the case last cited, that it is not competent for the legislature to provide for the collection of taxes by action in the courts ; that it would turn the courts into tax collectors.   But all personal actions are processes for the collection of money, and the courts are no more collectors of taxes in the one case than they are collectors of private claims in the other.   It is the sheriff who is the collector when it is adjudged that the tax or debt is due, and surely there is nothing incongruous in that. He is the best and most efficient of all collectors, and never objects to the performance of that function, for he is well paid for it. All that the courts are required to do is to decide whether the debt or tax is payable by the defendant, and what the amount of it is.   That is a purely judicial transaction.   This mode of enforcing the payment of taxes may be unusual, but what provision of the Bill of Rights or of the constitution of government does it infringe ?   As well might it be maintained that fines, forfeitures and penalties could not thus be enforced, and of examples of these the statute-book is full.   So municipal liens for taxes and assessments have been collected by actions of scire facias in the courts, and no one has ever thought that it was unconstitutional.   No doubt the legislature might provide a summary process in all cases of public claims.   But what right has the citizen to complain if instead of this he is secured a trial by jury to ascertain his liability before he can be compelled to pay ?   He would have better ground to complain if it had been denied to him.

It is also maintained, and in this contention it must be admitted that there is much plausibility, that there are difficulties in carrying this Act of Assembly into execution, by reason of the want of any provision for the ascertainment and assessment of the amount payable by each owner of an ore-bed.   It would have been better if the legislature had provided that the owner should make a return of the number of tons hauled over the public roads, and in default of his doing so, authorized the supervisors to assess the amount.   But can we set aside an Act of Assembly, because its machinery is lame and imperfect?   Our duty is to execute the legislative will in the way prescribed, when that way is constitutional, though a much better way might have been devised.   We

[Weber v. Reinhard.]

are bound to give the act a reasonable construction, *ut res magis valeat quam pereat.* When the owner refuses or neglects to pay the tax, the legislature has imposed upon the township the burden of proving by evidence, satisfactory to a jury, all that is required to fix liability upon the owner of the ore-bed. This may be unwieldy, but it is surely not unjust to the tax-payer. He can save himself from the costs of a suit, by a tender, in time, of the amount actually due. It is not a case where a valuation of property is required. It is a fixed rate upon the number of tons, and that the owner may be presumed to know, or to have the means of ascertaining, whether he is a landlord, or himself the actual occupant. It is not, indeed, expressly provided that the supervisors shall ascertain and assess the amount. But they must do so in order to maintain their suit, and recover a judgment; and they must do more; they must prove it by competent evidence. In this case, as appears by the affidavit of claim filed, there was a demand of a certain sum, and the plaintiff in error did not deny in his affidavit that the amount was correct.

Nor can it be doubted that the plaintiff in error is liable for the tax. He admits himself to be the owner of the ore-bed, and in the sense of tax laws of this Commonwealth, the owner of lands is always the landlord, and not the tenant, when they are occupied under a lease. See Act of April 6th, 1802, sect. 8, 3 Smith 516 ; Act of April 3d 1804, sect. 6, 4 Smith 203 ; Act of April 15th 1834, sect. 46, Pamph. L. 518 ; Caldwell v. Moore, 1 Jones 58.

It is unnecessary to consider the contention, that the imposition of this tax impairs the obligation of the contract between the landlord and tenant, for it is too clear for argument, that a tax upon the subject-matter of a contract, by whichever party it is made payable, can never produce that effect.　　　Judgment affirmed.

READ, C. J., and WILLIAMS, J., concurred in this opinion, except as it relates to the extension of Hammett v. The City, beyond the case itself.

AGNEW, J., *dissenting.*—With my views of the Act of Assembly in this case, I cannot assent to the judgment just given. The point I make upon this act is, that, when no specific tax is laid, but a rate only, the citizen is not charged with the tax, until the subject of taxation is assessed and the tax is laid upon him. Here is an act which imposes upon the owners of ore-beds in a single township, a tax, at a rate of a cent and a half a ton, payable every six months, for every ton of ore mined and hauled away from their banks, over the public roads of the township, without providing for any assessment or mode of ascertaining the tax before payment, or for any redress or appeal from an unjust and exorbitant demand by the collector, and which, in default of payment of

[Weber *v.* Reinhard.]

an unadjusted and unknown sum, subjects the citizen to the penalty of a suit and costs to enforce collection. The fundamental error in the opinion just read, is, in my judgment, the confounding of a rate fixed by the act, with the tax itself. It confounds the measure of a duty with the duty. The law furnishes a rate, but the rate is only the measure of the tax, when applied to the subject of taxation. As to each citizen, his tax is not laid until the subject is ascertained, and the rate applied to it. To escape from this dilemma, the opinion falls into a second error, by assuming in the next place, that the remedy for *non-payment* is itself an assessment. The words of the act are, "and in *default of payment*, the same to be *collected* as *debts* of like amount are collected by law." Here the law provides for *collection*, not assessment, in default of *payment*, and assumes that a debt or duty exists, which has not been laid on the tax-payer. I concede that a tax may be assessed by a judicial proceeding, though it be an onerous mode of assessment. But the vice of this law is that it establishes no mode of assessment, judicial or otherwise, but first commands payment of an unascertained sum, and then in default of payment, commands collection by a suit, and the infliction of costs. It is the most elementary principle of law, that there can be no remedy for a breach of duty, until the duty is ascertained. Under this act, no tax is individuated, and no duty imposed before collection. The Act of 1844, in relation to state taxes, will serve to illustrate this subject. That act directed moneys at interest to be taxed, and fixed the rate at three mills. Warrants of assessment were issued, and the citizen was required to make a return of the *subjects* of taxation to the assessor, and if he failed or refused, the act then directed the assessor to ascertain the subjects, and assess the tax from the best light he could obtain. Thus a tax was laid on the citizen, and the duty of payment attached. The proceeding to levy the United States income tax was similar. It is evident, that neither the three mills rate, nor the five per cent. rate was a tax, and without a proceeding to assess upon each individual his specific tax, that no tax was laid upon him, and no duty rested upon him to pay it. Had the State, or the United States, after fixing the rate only, ordered payment, and in default of payment, commanded the collector to distrain for the tax, or to bring a suit to recover it, every one could perceive the outrage on the rights of the citizen. No tax had been laid upon him, and payment would be impossible Were any one in reply to the hardship, to say to him, well, gather up your bonds, notes and other securities, make a calculation, and assess yourself, every one would perceive its absurdity ; yet that is precisely the present case. A rate is given, a command to pay, and then a suit and costs ordered for non-payment, notwithstanding not a citizen has been assessed, and not a tax ascertained. I say, that this act has not

[Webb *v.* Reinhard.]

provided due process of law to ascertain the citizen's duty, and, therefore, that the infliction of the penalties of a suit and costs, to collect what has not been laid on the citizen by lawful process, is in violation of the Bill of Rights, which provides that no one can be deprived of his property, unless by the judgment of his peers, *or the law of the land*. The words " or the law of the land," have been decided to mean the same thing as " due process of law." Fettar *v.* Wilt, 10 Wright 457; Craig *v.* Kline, 15 P. F. Smith 413.

It is too clear for argument, that the tax of an individual is the result of the rate applied to the subjects of taxation which belong to him, and consequently, that he is not taxed until the rate is applied to his property by some legal mode of adjustment. Then it is equally clear, that until his tax is legally adjusted, no duty of payment can arise, and consequently no proceeding to collect the alleged tax is justifiable, until the tax is so adjusted and laid. The order to collect, whether by distress or by suit, before the tax is legally laid, is therefore without due process of law. Had the act directed an assessment even by a magistrate, the duty of payment would have existed, and then payment could be enforced by suit, though it be onerous to do so. But here the law visits the citizen with the duty of payment first, and assessment afterward, if a suit to collect in default of payment can be called an assessment.

It is said, the citizen may avoid suit by a tender. But a tender implies a tax to be tendered. No sum has been laid on the citizen which he is bound to pay, or the collector is bound to receive. The tender is impossible. If he tender what he believes to be just, the collector may deem it insufficient. And again, the law has made no provision, either for a return or for an account to be kept. Then it is said, the court will supply a proceeding to remedy the defect in the law. I grant, that in judicial proceedings, a court through its general powers, may supply defects of legislation. But taxation is not a judicial proceeding, and the courts have no power to supply an assessment. The case is not in the power of the court until suit is brought to collect the tax; but then it is too late, for the suit cannot be lawfully maintained until the duty has been imposed on the citizen by the assessment. If there be no mode of assessment, the law-making power only can supply it. Look at this law how you will, it is as clear as the noonday, that it has provided only a rate and no mode of laying the tax on the individual tax-payer; that it first orders payment, and in default of payment, inflicts the penalty of a suit with costs, for not performing an unimposed duty. Imagine a collector calling on a mine-owner for his tax, without duplicate, assessment or known tax. " How much is it?" says the citizen. "I don't know," says the collector. " How, then, can I pay?" " That's your business," says the collector. " No, it is not; the law did not re-

[Weber *v.* Reinhard.]

quire me to make a return, or keep an account, or assess myself."
" Well, I want your tax," says the man in authority. " Here are
five dollars." " No, I want thirty dollars," rejoins the officer.
" I can't pay that." " Well, I'll collect the tax by suit, and com-
pel you to pay the costs." This is called taxation. , I call it ar-
bitrary exaction, without due process of law. It is evident, this
act is the product of that vicious practice prevailing among legis-
lators to object to no local bill a member from the district chooses
to champion as his local measure, a custom in violation of the oath
of office, and of the duty of the representative to the people of
the state. I would say to those who procured this act, in the
language of this court in Philadelphia Association *v.* Wood, 3
Wright 73 : " Considering, then, that this imposition is so extraordi-
nary in its character, of such doubtful constitutional validity, so
dangerous in its tendencies as a precedent, and so unusual in the
form of its enforcement, we most respectfully decline, for the ju-
diciary department of the government, the enforcement," &c.