GEORGE KALIAN *vs.* FRED M. LANGTON, *Tax Administrator.*

JUNE 14, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

368

Powers, J. This is a petition brought pursuant to the provisions of G. L. 1956, §44-10-22, praying for the recovery of a gross receipts tax paid under protest, the imposition and assessment of which, it is alleged, are in violation of the United States constitution and the constitution of this state. It was heard on an agreed statement of facts by a superior court justice who, on motion of the parties, certified to this court the following questions of doubt and importance:

> "1) Is Chapter 10 of Title 44 of the 1956 General Laws of Rhode Island, entitled 'Unincorporated Business Tax', unconstitutional in that it violates Section 1 of Article XIV of the Amendments of the United States Constitution?
>
> "2) Is Chapter 10 of Title 44 of the 1956 General Laws of Rhode Island, entitled 'Unincorporated Business Tax', unconstitutional in that it violates Section 2 of Article I of the Rhode Island Constitution?"

The ultimate facts as agreed between the parties are essentially these: That petitioner is the owner of an unincorporated retail establishment located at 124 Charles street in the city of Providence; that as such owner he registered with the tax administrator and filed an annual return for the year 1961 in accordance with the provisions of §44-10-10; that on March 29, 1962 the administrator notified petitioner he was indebted to the state of Rhode Island for the year 1961 in the amount of $344 together with interest thereon of $2.41; that he thereupon requested a hearing as provided by statute and was heard on April 13; that on

April 30 under protest petitioner paid the tax together with accumulated interest thereon in the total sum of $348.24; that petitioner is a proper party to bring the instant proceedings; and that no procedural question is in issue.

The tax assessment of which petitioner complains was made by the administrator pursuant to §44-10-5, which provides as follows:

"Each taxpayer engaged in this state in retail mercantile business, wholesale mercantile business, motor transportation business, amusement business, or manufacturing whose gross receipts shall amount to thirty thousand dollars ($30,000), or more, for the income year shall annually pay to the state a tax with respect to carrying on or doing such business, which tax is hereby imposed and assessed and which shall be paid by each taxpayer with respect to the entire gross receipts from such business conducted within the state during the preceding calendar year, at the following rates: two dollars ($2.00) on each one thousand dollars ($1,-000) or fraction thereof of such gross receipts from manufacturing, motor transportation business, amusement business or retail mercantile business, and one dollar ($1.00) on each one thousand dollars ($1,000) or fraction thereof of such gross receipts from wholesale mercantile business conducted during any income year; provided that five thousand dollars ($5,000) of the total gross receipts received by any taxpayer shall be exempt from said tax."

We shall first consider petitioner's contentions as they relate to the second certified question. Article I, §2, of our state constitution reads as follows: "All free governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens."

It is petitioner's position that the tax formula set forth in §44-10-5 is violative of the constitutional mandate in that no consideration is given to the net earnings of separate business concerns having identical gross receipts. The

result, he argues, is an arbitrary fee of $2 for each $1,000 in sales, even though an identical volume of sales as reflected in gross receipts may represent a substantial profit for one such concern and slight profit or even a loss for another. Thus considered, he contends, the burden is not equally distributed as required by our constitution. In support thereof he cites cases from several jurisdictions, typical of which is *State* v. *U. S. & Canada Express Co.,* 60 N. H. 219.

There the New Hampshire statute imposed a 2 per cent tax on the gross receipts of the business in which the defendant was engaged, and the court held the tax unconstitutional in that it violated a requirement of the New Hampshire constitution that taxes must be "proportional and reasonable." The word "proportional" was construed so as to require a uniformity of imposition on the occupations of all citizens and not just a class thereof engaged in the same occupation.

It would serve no purpose to review the provisions of each of the tax statutes held to be invalid by the decisions of the appellate courts to which our attention has been called. Suffice it to say they were all similar to §44-10-5, and that they were all struck down by the decisions in the cases cited.

These cases are of no assistance to petitioner, however, for the reason that they turn on the constitutional limitations of the particular state in which they were decided. An examination of such cases discloses that the constitutions of the states in question were held by the courts to require a strict uniformity in the imposition of a tax, similar to that provided in §44-10-5.

The New Hampshire court equated the pertinent provision of that state's constitution with comparable language in the constitution of Massachusetts, citing *Commonwealth* v. *People's Five Cents Savings Bank,* 87 Mass. 428, and *City of Lowell* v. *Oliver,* 90 Mass. 247.

In *In the Matter of Dorrance Street,* 4 R. I. 230, this court, construing art. I, §2, distinguished the provisions of

our constitution from those in the Massachusetts constitution. At page 249, Chief Justice Ames speaking for this court observed:

> "But evidently a wide discretion with regard to the distribution of the burdens of state amongst the citizens was intended to be reposed in the general assembly by the will of the people, as signified in this clause of the constitution. The form is 'ought to be,' the word is *'fairly'* distributed, not 'equally' even—unless equality be fair, which it is not always in any sense, and never is in some senses; and especially, the words are not 'equally upon property,' or words to that effect, as in the constitution of Louisiana. The words are not as in the constitution of Massachusetts, *empowering* the general court 'to impose and levy proportional and reasonable assessments, rates, and taxes upon *all* the inhabitants of, and persons resident, and estates, lying within the said commonwealth,'—broad as has been the construction put upon these words by the supreme court of that state."

It was the opinion of this court that unless the proposed distribution was so outrageously subversive of all the rules of fairness as to constitute oppression, the language employed by the people in art. I, §2, was by way of advice and direction to the lawmaking power rather than to the courts by way of restraining such power.

In our judgment the imposition of a tax on gross receipts as provided in §44-10-5 is not so unfair as to be violative of the constitutional provision on which petitioner relies.

Indeed, in the New Hampshire authority relied upon by petitioner, the court there readily conceded that the rule might be otherwise where a constitutional requirement of uniformity was absent. In this respect the court cited decisions from other jurisdictions including *Weber* v. *Reinhard,* 73 Pa. 370, *Bright* v. *McCullough,* 27 Ind. 223, *United States Express Co.* v. *Ellyson,* 28 Iowa 370, and others.

The petitioner's remaining contentions, to the effect that the statute in question is so arbitrary, capricious and dis-

criminatory as to be violative of constitutional limitations on the taxing power of the state, apply with equal meaning to the prohibitions contained in art. I, §2, of the Rhode Island constitution and art. XIV, §1, of amendments to the constitution of the United States. It suffices therefore to consider such contentions by relating them only to said article XIV, the pertinent language of which is as follows:

> "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is not seriously contended that G. L. 1956, chap. 10 of title 44, constitutes a denial of due process; nor can it be. The act provides for a hearing by the administrator to any person aggrieved and for recourse to the courts should the alleged grievance remain unresolved after such hearing. It clearly provides a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights so as not to deny due process. *Carr* v. *Brown,* 20 R. I. 215; *Pennoyer* v. *Neff,* 95 U. S. 714; *Palmer* v. *McMahon,* 133 U. S. 660.

It is, however, vigorously contended that the statute in issue denies petitioner the equal protection of the laws. The petitioner asserts that the statute is arbitrary, capricious and discriminatory within the meaning of the equal protection guarantee, in that wholesalers are assessed at a rate less than that imposed on those in the retail trade; that it makes an arbitrary and discriminatory distinction between unincorporated and incorporated businesses; and that, even if not repugnant to the state constitution, it is arbitrary in that gross receipts have no relation to net profits or earnings.

This latter contention, he argues, was the rationale of the

decision in *Stewart Dry Goods Co.* v. *Lewis*, 294 U. S. 550. In that case the court struck down, as a denial of equal protection, a Kentucky statute which imposed a graduated gross receipts tax on retail merchants. Such tax consisted of 1/20 of 1 per cent on the first $400,000, and increased gradually on each additional $100,000 until the total gross receipts reached $1,000,000, at which point the rate stabilized at 1 per cent per annum.

Rejecting this formula as constituting a denial of equal protection the court stated at page 565:

"The Kentucky statute ignores the form of organization and the method of conducting business. The taxable class is retail merchants, whether individuals, partnerships or corporations; those who sell in one store or many; those who offer but one sort of goods and those who through departments deal in many lines of merchandise. The law arbitrarily classifies these vendors for the imposition of a varying rate of taxation, solely by reference to the volume of their transactions, disregarding the absence of any reasonable relation between the chosen criterion of classification and the privilege the enjoyment of which is said to be the subject taxed. It exacts from two persons different amounts for the privilege of doing exactly similar acts because the one has performed the act oftener than the other. We hold the act unconstitutional, and reverse the judgment."

The petitioner acknowledges that the formula in the Kentucky statute is distinguishable from that provided in §44-10-5 where the tax imposed, although stated to be $2 on the first taxable $1,000 in receipts and $2 on each additional $1,000 thereafter, is a flat 2/10 of 1% on the total receipts in excess of the exemption. He argues, however, that the distinction lacks legal significance, particularly by reason of the total exemption from the statute of merchants whose total annual gross receipts are less than $30,000.

Prescinding from the exemption aforesaid, hereinafter to be considered, we are persuaded by a careful reading of the

decision in the *Stewart Dry Goods Co.* case that it was the graduated feature of the Kentucky computation on which the court based its decision. There the tax imposed on some became as high as twenty times that imposed on others engaged in carrying on a similar business. Within the same classification there was thus achieved a discrimination so capricious and arbitrary as to exceed the discretion generally accorded to the legislatures of the states when establishing classifications for tax purposes. *State Board of Comm'rs of Indiana* v. *Jackson,* 283 U. S. 527.

It is a long and well-established principle that, so long as the burden falls equally on each business within a class, the taxing power of the state extends to the right to engage in business, the privilege being the subject of the tax and the gross receipts the measure thereof. *Norman* v. *Southwestern R. R.,* 42 Ga. App. 812; *Winter* v. *Barrett,* 352 Ill. 441; *Knisely* v. *Cotterel,* 196 Pa. 614; and *State ex rel. Botkin* v. *Welsh,* 61 S. D. 593.

Indeed, Mr. Justice Cardozo, dissenting with the concurrence of two associates, states categorically that the opinion of the majority in the *Stewart Dry Goods Co.* decision turns on the principle of graduation of the Kentucky tax, and bases his dissent on that ground.

The petitioner further contends, nevertheless, that the tax is discriminatory in that it imposes on wholesalers one half the rate of that to which retailers are subject. As previously observed, however, discrimination in the imposition of a tax on the right to do business will be allowed if the tax imposed is the same for all similarly engaged. In *State Board of Tax Comm'rs of Indiana* v. *Jackson,* 283 U. S. 527, Mr. Justice Roberts, author of the opinion in the *Stewart Dry Goods Co.* case, stated at page 537, quoting from *Brown-Forman Co.* v. *Commonwealth of Kentucky,* 217 U. S. 563, 573:

> " 'A very wide discretion must be conceded to the legislative power of the State in the classification of

trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' "

He added, "Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great." See also 1 Cooley, Taxation (4th ed.), §269, p. 574.

Nor is the imposition of a tax on the gross receipts of wholesalers at a rate equal to but one half of the rate imposed on the gross receipts of retail merchants capricious or arbitrary so as to be unjustly discriminatory. It is reasonable to expect that the gross receipts of a wholesaler, resulting as they do from his total sales to a number of retail merchants, will, in the normal course of trade, substantially exceed the gross receipts of any one such retail merchant attributable to the sale of the merchandise purchased from said wholesaler. Presumably then, the base of the tax, on the privilege of doing business, is broader in the case of the wholesale merchant. If, in the judgment of the general assembly, this circumstance is such a factor as to warrant the imposition of a lower rate, it is not for this court to take issue.

Nor is the act rendered invalid by virtue of the general assembly's failure to include therein those incorporated businesses which, if unincorporated, would be subject to the tax. Pursuant to §44-11-2, as amended, such incorporated businesses are subject to a tax of 6 per cent on net income, or forty cents on each $100 of their corporate excess, whichever is the greater.

In the judgment of the general assembly, the distinctions in operating practices which exist between incorporated and unincorporated businesses are sufficient to justify separate

and differing forms of taxation. It is not for this court to evaluate legislative policy. Rather, it is for petitioner and others similarly situated to determine whether, on balance, their interests are best served by operating either as individuals or as corporations.

Finally, petitioner most forcefully contends that the total immunity from the provisions of the act of those whose gross receipts are less than $30,000, while subjecting those whose gross receipts are in excess thereof to a tax on all but $5,000 of the total receipts, is so arbitrary a discrimination in favor of the smaller businessman as to fall within the prohibition of the equal protection clause. The petitioner correctly protests that by this formula a tax of $50 is imposed on receipts of $25,000 from which others in the same classification are immune. He argues that not the slightest reason can be advanced in support of the discrimination.

We are persuaded that there is merit in this argument. It is not unlawful discrimination for the legislature to provide for exemptions where some reason exists therefor. *People of the State of New York ex rel. Metropolitan St. Ry.* v. *New York State Board of Tax Comm'rs,* 199 U. S. 1.

It may well be that, by excluding from the act those whose gross receipts do not attain a stated minimum, an advantage would inure to taxpayers generally by limiting the administrative staff to that which would be commensurate with the revenue to be realized.

If in the judgment of the general assembly sound fiscal policy is thereby established, legislative authority for such an act is not lacking. The act, however, must not result in an arbitrary discrimination between two groups in the same classification.

Yet, in the exclusion presently under consideration, total immunity from the provisions of the act has been accorded to those whose gross receipts are less than $30,000, while an exemption of only $5,000 is provided from the total receipts of those who gross $30,000 or more. The immunity

thus accorded is, in our judgment, a violation of the equal protection clause of the fourteenth article of amendments. We, therefore, hold the exclusion to be void, except as to the first $5,000 of gross receipts.

The striking down of the immunity presently enjoyed by those whose gross receipts are less than $30,000 is however of no assistance to petitioner. He is subject to the remaining provisions of the act which, in our judgment, constitute a valid exercise of the legislative power to tax. It is the duty of this court to declare as valid all acts of the general assembly not in violation of the constitution beyond a reasonable doubt. *State* v. *Guyette,* 81 R. I. 281.

The principle is well established that the invalidity of a portion of an act does not render the remainder of the act unconstitutional, if the objectionable portion is clearly severable. *Prata Undertaking Co.* v. *State Board of Embalming and Funeral Directing,* 55 R. I. 454.

Moreover, by §44-10-25 the legislature has expressly provided for such a contingency, and by reason thereof the provisions of chapter 10 of title 44, herein considered, and to which the petitioner is subject, are not in violation of either the federal or state constitutional requirements on which he relies. *City of Newport* v. *Horton,* 22 R. I. 196.

Each certified question is answered in the negative, except as to that portion of §44-10-5 which we have hereinabove construed relative to businesses whose gross receipts are less than $30,000. The papers in the case with our decision endorsed thereon are ordered sent back to the superior court for further proceedings.

*Rabinowitz & Zimmerman, Coleman B. Zimmerman,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Joseph L. Breen,* Chief Special Counsel, for State.

*D. A. St. Angelo,* General Counsel, Division of Taxation, Department of Administration, for respondent.