STATE, JOHN A. MURRAY, Complainant, vs. ANGELO ARMENO.

PROVIDENCE—MARCH 17, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, and Parkhurst, JJ.

(1) *Constitutional Law.   Barber Act.   Searches and Seizures.*

Cap. 1100, § 4, of the Public Laws (the Barber Act), authorizing any member of the board to enter and make reasonable examination of any barber shop for the purpose of ascertaining its sanitary condition, is not in contravention of article I, section 6, of the constitution, which prohibits unreasonable searches and seizures.

(2) *Constitutional Law.   Right to Jury Trial.*

Cap. 1100, § 13, of the Public Laws, as amended by C. P. A., § 1215, permitting an appeal from a decision of the board to the Supreme Court, does not deprive a defendant of any constitutional right to a jury trial, because a decision of the board revoking a certificate is not a criminal prosecution within the meaning of article I, section 10; and article I, section 15, providing that "the right of trial by jury shall remain inviolate," does not apply to cases of this kind.

(3) *Constitutional Law.   Certain Amendments do not Apply to States.*

Article V of amendments to the constitution of the United States is a limitation on the exercise of power by the Federal government, and does not apply to the State governments.

(4) *Constitutional Law.   Construction of Statutes.*

A statute which in one section declares an unsanitary shop to be a common nuisance, and provides that the proprietor shall be subject to prosecution and punishment therefor, and in another section provides the penalty for maintaining this special statutory nuisance, does not impose two different punishments for the same offence.

(5) *Constitutional Law.   Equal Protection of Laws.*

Cap. 1100 of the Public Laws (the Barber Act), which prohibits practicing the profession of barber in cities except in compliance with the terms of the act, and by section 16 empowers town councils to adopt its provisions, thereby making its terms from such adoption applicable to such towns, is not in contravention of article XIV of amendments to the constitution of the United States, providing that "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws," since it can not be regarded as obnoxious as being a special or local law; or as a delegation of legislative power.

CRIMINAL COMPLAINT.   Heard on constitutional questions certified under C. P. A., § 474.

BLODGETT, J. This is a criminal complaint brought in the District Court of the Sixth Judicial District under sections 14 and 15 of chapter 1100 of the Public Laws, passed April 17, 1903, and charges that on the 17th day of November, 1908, at Providence, the defendant "did wilfully practice the occupation of barber, to wit, did shave, trim the beard and cut the hair of a certain person, to wit, Andrew J. Flinn, for hire and reward received by the said Angelo Armeno, alias John Doe, without having first obtained a certificate of registration in accordance with the provisions of chapter 1100 of the Public Laws of said State of Rhode Island."

The defendant was arraigned on December 15, 1908, and pleaded "not guilty." On December 18th he filed a motion asking that the complaint be dismissed on the ground that the act under which the complaint is brought is unconstitutional, and thereupon, under section 474 of the Court and Practice Act, the constitutional questions raised were certified to this court to be heard and determined, as follows:

"1. Is Chapter 1100 of the Public Laws of Rhode Island unconstitutional, in that in Section 4 thereof it authorizes any member of the Board of Examiners to enter any barber shop in any city in this state, without warrant provided for in Section 6 of Article I of the Constitution of the State of Rhode Island?

"2. Is said Chapter in conflict with Sections 10 and 15 of Article I of the Constitution of Rhode Island, for the reason that in Section 13 of said chapter it is provided that a person aggrieved by the finding of the Board may appeal to the Supreme Court, and makes no provision for trial by jury?

"3. Is said Chapter in Sections 4 and 15 thereof in conflict with Article V of Amendments to the Constitution of the United States of America, in that it provides in Section 4 the statutory punishment for common nuisance, and in Section 15 a punishment by fine?

"4. Is said Chapter in Sections 1 and 16 thereof, a local or special law, and in conflict with Section 1 of Article XIV of Amendments to the Constitution of the United States, in that its government of the cities of the state is compulsory, though

optional so far as towns are concerned, thus denying to the citizens of the cities equal protection of the laws with the citizens of the towns?

"5.   Is said Chapter in Sections 1 and 16 thereof in conflict with Section 1 of Article XIV of Amendments to the Constitution of the United States, in that its provisions govern the cities of the state and only such towns as shall, by their councils, adopt the provisions of this chapter, thereby denying to the people of the towns equal protection of the laws with the people of the cities?"

Article I, section 6 of the constitution of Rhode Island provides:  SEC. 6.   "The right of the people to be secure in their persons, papers and possessions, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue, but on complaint in writing, upon probable cause, supported by oath or affirmation, and describing as nearly as may be, the place to be searched, and the person or things to be seized."

(1)   The portion of section 4 of Chapter 1100 of the Public Laws which is claimed to be in contravention of this constitutional provision is as follows: "any member of said board shall have power to enter and make reasonable examination of any barber shop in any city in this state during business hours, for the purpose of ascertaining the sanitary condition thereof."

As is well stated in the brief for the State, this section of the act in question does not authorize either a search or a seizure. It merely authorizes an examination, which is essentially different from a search.   Nothing is authorized to be seized; no authority is given to break open doors, drawers, desks, chests, or anything else.   The purpose is merely to empower the board to survey premises at reasonable times, so as to know the sanitary conditions of tools, appliances, and furnishings, and to enable it to determine whether or not the law is being properly regarded.   Although the conditions upon such an examination should be found to be most unclean and unsanitary, yet the examiner is not authorized to take any summary action, such as seizure of the objectionable tools, appliances, or furnishings, as the case may be, but the examination is made only "for the purpose of ascertaining the sanitary

28

condition thereof" and to enable the board to judge whether or not the law is being obeyed, with the ultimate purpose of revoking the offender's certificate of registration after notice in writing and an opportunity to be heard, with appeal to the Supreme Court, as provided in section 13 of the act as amended by section 1215 of C. P. A.

In *Commonwealth* v. *Carter*, 132 Mass. 12, the constitutionality of a milk law authorizing inspectors to enter carriages used in the conveyance of milk and to take specimens thereof was contested because it warranted unreasonable searches and seizures.    It was held by the court (p. 15) that "such a seizure of milk for the purposes of examination is a reasonable method of inspection, and does not require a warrant.    It is a supervision under the laws by a public officer of a trade which concerns the public health, and is within the police power of the Commonwealth."

We therefore answer the first question in the negative.

(2)    The appeal to the Supreme Court provided for in section 13, as amended by section 1215 of the Court and Practice Act, does not deprive the defendant of any constitutional right to a jury trial.

The portion of section 13 in question is as follows:    "Any person aggrieved by any decision or ruling of said board may, within thirty days, exclusive of Sundays and legal holidays, after receiving notice of said decision, take an appeal therefrom to the supreme court, and said court shall, as soon as may be, hear and determine said appeal."

The material part of article 1, section 10, of the constitution of Rhode Island, is as follows:    "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury."

Article 1, section 15, of the constitution of Rhode Island is as follows:    "The right of trial by jury shall remain inviolate."

· Section 10 of article 1 of the constitution has no application, because such a decision or ruling of the board is not a criminal prosecution, but is simply a method provided for revoking certificates of registration when the holder thereof has shown himself unfitted to practice the occupation of barber, or has

disqualified himself by his failure to post his certificate in a conspicuous place or to renew his certificate and pay the fee required by law.

There is no penalty or punishment provided, except the forfeiture of his license. A judicial trial, however, is secured to the defendant under this provision, and section 15 of article 1 of the constitution does not apply to cases of this kind. See *State* v. *Roy*, 22 R. I. 538.

(3)     It is a sufficient answer to the third question submitted to say that article V of amendments to the constitution of the United States does not apply to State governments, but only to the Federal government. *State* v. *Flynn*, 16 R. I. 10; *State* v. *Brown & Sharpe Mfg. Co.*, 18 R. I. 16–20.

The construction placed upon clauses 4 and 15 of this act by the respondent, in his contention that they impose two different punishments for the same offence, is unwarranted.

(4) Section 4 declares an insanitary barber shop to be a common nuisance and provides that "the proprietor thereof shall be subject to prosecution and punishment therefor," and section 15 provides that the penalty for maintaining this special statutory nuisance shall be "a fine of not more than twenty dollars."

The material portions of sections 1 and 16 of the act under (5) consideration are as follows: "SEC. 1. It shall be unlawful for any person to practice the occupation of barber in any city in this state unless he shall have first obtained a certificate of registration as provided in this act." . . . "SEC. 16. The town council of any town . . . is hereby authorized and empowered to adopt the provisions of this act; . . . and when so adopted the word 'city' . . . shall be construed to mean and include such town." . . . . The material part of article XIV of amendments to the constitution of the United States with which these provisions of the statute are claimed to conflict is as follows: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

The precise question raised seems to be: Is this law, from the fact that its prohibitions extend only to barbers in cities, a local and special law, and therefore unconstitutional?

In *Missouri* v. *Lewis*, 101 U. S. 22, it was said, by Mr. Justice Bradley (p. 30): "Each State has the right to make political sub-divisions of its territory for municipal purposes, and to regulate their local government. As respects the administration of justice, it may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right. . . . We might go still further, and say, with undoubted truth, that there is nothing in the constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. . . . If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." And see *Gunn* v. *Union Railroad Co.*, 27 R. I. 320, 323; *State* v. *Berlin*, 21 So. Car. 292.

Nor is it a valid objection that it is a delegation of legislative power to provide that the law shall apply to a given town only upon a vote of its town council, or that the application of the law in a town shall be left to a vote of the town council and not to the vote of the electors. Thus, in *State* v. *Pond*, 93 Mo. 606, in discussing a provision of the local option liquor law of that State which became effective in all incorporated cities or towns having a population of twenty-five hundred or more inhabitants when adopted by a majority vote of the legal voters, the court said (p. 622): "While this local option act provides that any county, or town, or city of the class named, may, by a majority vote, put such county, town, or city under the operation of the law, it does not refer to them the question of passing a law; that the legislature had already done, and only called upon them to decide by a vote whether they would accept the

provisions of a law regularly enacted by both houses of the General Assembly and approved by the Governor. By its provisions the law and not the vote extended its influence over the locality voting against the sale of intoxicants. It was the law that authorized the vote to be taken, and when taken the law, and not the vote, declared the result that should follow the vote. The vote was the means provided to ascertain the will of the people, not as to the passage of the law, but whether intoxicating liquors should be sold in their midst. If the majority voted against the sale, the law, and not the vote, declared it should not be sold. The vote sprang from the law, and not the law from the vote. By their vote the electors declared no consequences, prescribed no penalties, and exercised no legislative function. The law declared the consequences, and whatever they may be they are exclusively the result of the legislative will." Cooley, Const. Lim. (7th ed.) 173, 174, and cases cited. And see the cases cited in the recent cases of *In re O'Brien*, 29 Mont. 530, 546 (1904), and *Fouts* v. *Hood River*, 46 Ore. 492, 501 (1905). Nor need the question be submitted to the electors; It is competent for the legisture to leave the matter to be otherwise determined.

Thus in *Commonwealth* v. *Bennett*, 108 Mass. 29, the court says: "It is equally within the power of the legislature to authorize a town by vote of the inhabitants, or a city by vote of the city council, to determine whether the sale of particular kinds of liquors within its limits shall be permitted or prohibited." And see cases cited. *In State* v. *Cooke*, 24 Minn. 247–249, it was held that "To the police power thus vested in the council no valid objection can be made. Under it the council might determine that no person should be permitted to deal in liquors, and impose and enforce penalties for doing so. We can see no reason to doubt that it was competent for the legislature to have given the prohibitory power to the council, and in the charter itself have prescribed the penalty for disregarding such prohibition—prescribing in such case for the contingency of a prohibition by the council; and a disobedience of such prohibition would not subject that part of the charter to the objection that it became law only upon

the action of the council. In such case it would be the law, upon the passage of the act, that if the council should prohibit the traffic in liquors any one violating such prohibition should be liable to the penalty."

In *Schulherr* v. *Bordeaux*, 64 Miss. 59, the court says (p.71): "The legislature has plenary power over the matter of licensing or not licensing the traffic in liquors, and may in its discretion fix the terms on which a license may be granted. It may make it depend on the petition of freeholders, householders, heads of families, voters, women, widows, wives, mothers, or maidens, or what it pleases. We know no limit to its discretion as to this."

And, finally, it was held in *State* v. *Parker*, 26 Vt. 357, 367, that "one may find any number of cases, in the legislation of congress, where statutes have been made dependent upon the shifting character of the revenue laws, or the navigation laws, or commercial rules, edicts, or restrictions of other countries. In some, perhaps, these laws are made by representative bodies, or, it may be, by the *people of these states*, and, in others, by the lords of the treasury, or the boards of trade, or by the proclamation of the sovereign; and in all these cases, no question can be made of the perfect legality of our acts of congress being made dependent upon such contingencies. It is, in fact, the only possible mode of meeting them, unless congress is kept constantly in session. The same is true of acts of congress by which power is vested in the President to levy troops or draw money from the public treasury, upon the contingency of a declaration or an act of war committed by some foreign state, empire, kingdom, prince, or potentate. If these illustrations are not sufficient to show the fallacy of the argument, more would not avail."

And it needs no argument to show that the legislature may constitutionally provide for the exercise of the police power in respect of the subject now under consideration in the same manner in which that same police power may lawfully be exercised in respect of the traffic in intoxicating liquors.

We therefore answer the fourth and fifth questions in the negative.

The papers in the case will be sent back to the District Court of the Sixth Judicial District, with the decision of the court upon the questions propounded certified thereon.

*William B. Greenough*, Attorney General, and *Harry P. Cross*, Assistant Attorney General, for State.

*John I. Devlin*, for defendant.