THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MARY LEHRMAN, Appellant.

First Department, June 11, 1937.

*Harold R. Medina* of counsel [*Irving Payson Zinbarg* and *William F. McNulty* with him on the brief; *H. Bennett Salomon,* attorney], for the appellant.

*Sol Ullman* of counsel [*John J. Bennett, Jr., Attorney-General*], for the respondent.

TOWNLEY, J. The record in this case shows that on March 5 and on May 14, 1935, the defendant in her regular course of business as operator of a beauty parlor removed certain hair from

the lip of Gertrude Budoff, a female investigator employed by the department of education. The treatment used was a process of electrolysis. The question presented is whether this is practicing medicine in violation of the statute.

Electrolysis is an electro-chemical process and consists of inserting a needle charged with a small quantity of negative electricity into the follicle of the hair which is to be removed. The negative electricity which is supplied by an ordinary dry cell acts as an alkaline caustic. This destroys the root of the hair and enables it to be removed without pain or discomfiture. It is said to be the only safe method of removing hair as well as the most effective. Other methods usually result in regrowth and a necessity for further removal. In a small percentage of cases the process may be dangerous.

Practices such as this have always been held to be matters of personal taste and adornment and not connected with the practice of medicine.

The charge against the defendant is practicing medicine, " by unlawfully holding defendant out to said Gertrude Budoff as being able to diagnose, treat, operate and prescribe for a human disease, pain, injury, deformity and physical condition of said Gertrude Budoff and by then and there offering to and undertaking for said Gertrude Budoff to diagnose, treat, operate and prescribe for a human disease, pain, injury, deformity and physical condition of said Gertrude Budoff."

The information used words that are found in the Education Law and which have already been the subject of judicial decision. In *Engel* v. *Gerstenfeld* (184 App. Div. 953) a civil action was brought by the operator of a beauty parlor to recover the value of services in removing superfluous hair by the means of electrolysis. The case originally went to the Appellate Term and the majority held that this was practicing medicine. The dissenting opinion, however, of Mr. Justice CALLAGHAN (102 Misc. 97, 105) gave an instructive discussion of the meaning that must have been intended by the Legislature in using the words " disease * * * deformity or physical condition " in the statute, as follows:

" Concededly there is nothing in the record to show that the growth of hair on a woman's face is a disease. The question then arises: Was it a ' deformity ' within the meaning of the statute? The Century Dictionary describes a ' deformity ' as a ' deformed or misshapen condition; an unnatural growth, or a distorted or misshapen part or member; disfigurement; as a bodily deformity.' The statute does not state or contain a definition of any of these words. The presumption, therefore, is that they were used in

their ordinary sense, and with their ordinary intent. A growth of hair on a women's face can certainly not be a 'deformed or misshapen condition.' In considering the second meaning given, viz., 'an unnatural growth or a distorted or misshapen part or member,' the words 'unnatural growth' cannot but pertain to matters that are *ejusdem generis*, when joined with the expression 'or a distorted or misshapen part or member,' common sense dictating to us that in the ordinary acceptation of such terms reference must naturally be to a physical growth or deformity, such as a web foot or a hunch back. Proceeding to the third meaning given by the Century Dictionary we find, that the word 'disfigurement' is stated to be 'the state of being disfigured,' *i. e.*, 'physically marred in any manner.' It would clearly be absurd for us to say that 'physically marred' would be applicable to the case at bar.

"I am not satisfied that the unnatural growth of hair on a woman's face is a deformity within the common definition of that word. Had the plaintiff adopted the same means in removing the hair in question as are commonly used by a barber in shaving a man, it could hardly be argued that she would be guilty of practicing medicine, in that she attempted to treat a deformity. The word 'deformity' in the statute evidently means some unnatural or misshapen condition of the body, and should not be so technically interpreted by us as to mean that the growth of hair on a woman's face is a deformity. Was this a 'physical condition' within the meaning of the statute? A physical condition is, I take it, any condition that is perceptible by the senses. Therefore, a physical condition is anything or any condition about the body which is the subject of observation. It could very forcibly be argued that the growth of a finger nail, or premature baldness, or a visible birthmark, or any growth upon the body is a physical condition, but the Legislature, I am sure, did not intend that such an interpretation should be put upon these words. It is quite as logical to say that a manicure or a barber is guilty of practicing medicine without a license in removing parts of the finger nail or the hairs on a man's face, as this plaintiff is in removing hair from a woman's face."

The case then went to the Appellate Division of the Second Department and that court expressly found that the treatment administered by the plaintiff did not constitute the practice of medicine within the statutory definition thereof.

This is concededly a test case. It is our holding that the statute was never intended to cover this type of beauty culture.

The judgment appealed from should be reversed and the information dismissed.

MARTIN, P. J., O'MALLEY, GLENNON and UNTERMYER; JJ., concur.

Judgment unanimously reversed and the information dismissed.