211 A.2d 665.

SERAFINO AVELLA *vs.* ALMAC'S INC.

SAME *vs.* STOP & SHOP, INC., OF R. I.

SAME *vs.* THE BIG G SUPERMARKETS, INC.

SAME *vs.* NYANZA MILLS OUTLET CO.

SAME *vs.* FIRST NATIONAL STORES, INC.

SAME *vs.* UNITED PUBLIC MARKETS, INC.

JUNE 29, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

JOSLIN, J. These six bills in equity are brought by the operator of an independent retail market selling food products to enjoin the respondents, each the owner and operator of two or more retail markets in this state, from advertising, offering to sell, or selling food products below cost in violation of G. L. 1956, title 6, chap. 13, commonly known as the Unfair Sales Practices Act and hereinafter referred to as the Act. The causes were consolidated for trial, and at the hearing in the superior court on the complainant's prayer for a preliminary injunction the trial justice certified the causes to this court pursuant to §9-24-26, when questions of law relating to the constitutionality of the Act were raised on the record which, in his opinion, were of such doubt and importance and so affected the merits of controversies as to require our immediate determination.

Statutes prohibiting selling below cost first made their appearance at the turn of the century and during the depression days of the 1930's were enacted in many states. 1 Callman, Unfair Competition and Trade-Marks (2d ed.) §27.1, p. 520. Our own Act was adopted in 1939. While in their particulars the Unfair Sales Practices Acts of the various states may differ, in their essential provisions they are substantially similar. Our Act, or at least those portions as here may be relevant, provides in substance for criminal sanctions as well as injunctive relief against a wholesaler or retailer who, intending to injure competitors or destroy competition, advertises, offers to sell or sells any item of merchandise at less than his cost as defined in the Act. Evidence of any such advertisement, sale or offer to sell is deemed prima facie evidence of the requisite intent. Among the acts exempted from both the civil and criminal provisions of the Act are isolated transactions; clearance, liquidation and judicial sales; sales of perishables to prevent deterioration; and sales of merchandise to any department of or institution maintained by the state or any political subdivision thereof, or for charitable purposes or to

relief agencies. The term "sales" is here used in a generic sense and includes advertising or offering for sale as well as actual sales.

The decree for certification states the questions of law considered to be of doubt and importance and insofar as they relate to the federal constitution as follows:

"1. Is the Rhode Island Unfair Sales Practices Act, so-called, General Laws of Rhode Island, 1956, Section 6-13-1 through 6-13-8, as amended, repugnant to the due process provision, so-called, contained in Section 1 of Article XIV of articles in addition to, and amendment of, the Constitution of the United States of America, which provides as follows:

'Nor shall any state deprive any person of life, liberty or property without due process of law'

for the reason that said Act is not necessary for the protection of the health, welfare or safety of the inhabitants of the State of Rhode Island and is therefore an unwarranted exercise of the police powers of the State in violation of said provision of Section 1 of Article XIV of articles in addition to, and amendment of, the Constitution of the United States of America?

"2. Is Section 6-13-4, General Laws of Rhode Island, 1956, repugnant to the due process provision, so-called, contained in Section 1 of Article XIV of articles in addition to, and amendment of, the Constitution of the United States of America, which provides as follows:

'Nor shall any state deprive any person of life, liberty or property without due process of law'

in that said section creates a presumption of guilt and removes the presumptions of innocence of an accused person?

"3. Is the Rhode Island Unfair Sales Practices Act, so-called, General Laws of Rhode Island, 1956, Section 6-13-1 through 6-13-8, as amended, repugnant to the due process provision contained in Section 1 of Article XIV of articles in addition to, and amendment of, the

Constitution of the United States of America, which provides as follows:

'Nor shall any state deprive any person of life, liberty or property without due process of law'

for the reason that the provisions contained in Section 6-13-1 (d), viz.:

'(d) The terms "cost to the retailer" and "cost to the wholesaler" as defined in paragraphs (a) and (b) shall mean bona fide costs; and sales to consumers, retailers and wholesalers at prices which cannot be justified by existing market conditions within this state shall not be used as a basis for computing replacement costs with respect to sales by retailers and wholesalers,'

are so vague, general and indefinite that they fail to sufficiently set forth the activity prohibited and made punishable under said Unfair Sales Practices Act, so-called?"

## THE STATE CONSTITUTION

It would add unduly to the length of this opinion and without useful purpose if we were specifically to set forth questions numbered 4, 5 and 6. It is sufficient to observe that in substantially identical form they present the same questions of repugnancy as do questions numbered 1, 2 and 3 but relate, however, to the due process of law portion of art. I, sec. 10, of our state constitution which provides that in all criminal prosecutions, the accused shall not "be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land."

The complainant argues that the application of the due process clause of our state constitution is confined to one accused of crime and that it is therefore without significance here inasmuch as the respondents have been proceeded against in equity rather than under the criminal provisions of the Act.

The respondents contend, however, that the constitutional provision applies in civil as well as in criminal proceedings

and they point to the early case of *Reynolds* v. *Randall*, 12 R. I. 522[1], where in passing on the constitutionality of a legislative enactment relating to the claiming of title to an easement by adverse possession the court after holding the act unconstitutional under the due process clause of the fourteenth amendment to the federal constitution, also found it was a violation of art. I, sec. 10, of the state constitution notwithstanding that the provisions of that clause seemed grammatically "to apply only in favor of persons accused of crime."

In our opinion, the references in *Reynolds* and in the other cited cases to the inclusion of both the criminal and the civil as being within the ambit of our due process clause were at best passing and in no case essential to the ultimate holdings, for in each case the decision could have rested solely on the federal due process clause. In *State* v. *Keeran*, 5 R. I. 497, directly at issue, however, was the applicability of our state constitution's due process of law clause to a statute outlawing or declaring a tippling house to be a common nuisance. In holding that the enactment was not repugnant to the state constitution, Chief Justice Ames, whose memory and outstanding contribution to our judicial history this year, the 100th since his untimely passing, we recognized at our Law Day ceremonies, speaking for the

---

*Footnote 1.* For other instances where this court has held as violative of art. 1, sec. 10, statutes not related to criminal proceedings see *Carr* v. *Brown*, 20 R. I. 215, where the questioned statute permitted a probate court to administer a person's estate as if deceased solely on the basis that he had been absent from his home without being heard from directly or indirectly for a period of seven years, and *Green* v. *Edwards*, 31 R. I. 1, 30, where the statutes authorized or attempted to authorize the barring of equitable tail, and all remainders and reversions expectant thereon created and in existence prior to the passage of the acts in question. See also *Gunn* v. *Union R. R.*, 23 R. I. 289, where the court by dicta and citing *Reynolds* v. *Randall, supra*, noted that art. 1, sec. 10, had application to all persons, whether accused of crime or not. At issue in *Gunn* was the constitutionality of a legislative enactment empowering what was then the appellate division of this court to grant a new trial in a civil case.

court and referring to our due process clause, said at page 505:

> "Surely, if any clause in the constitution has a definite meaning, which should exclude all vagaries which would render courts the tyrants of the constitution, this clause, embodying, as it does, with improvements, the precious fruits of our English liberty, can claim to have, both from its history and long received interpretation. It is no vague declaration concerning the rights of property, which can be made to mean anything and everything; but an intensely practical, and somewhat minute provision, guarding the rights of persons *accused of crime,* at the various points at which they may be exposed, when pursued or on trial, to oppression from the state or its officials."

Observing that the language of our due process of law clause had been borrowed from the Magna Charta which secured rights to all English freemen when prosecuted at the king's suit, the learned chief justice at page 507 continued:

> "With us, it is [art. I, sec. 10] the constitutional shield of *one accused of crime* against the sovereign many who are prosecuting him; and not a sword to cut down the power of the many, legislatively expressed, to declare what shall constitute a crime, when in future done by any or all. It guards the suspected and accused, the prisoner and captive, who need its protection; *and has no application to the honored and free, whose rights of property are guarded by other clauses of the constitution,* or by their rights and influence, as electors, under it." (italics ours)

It is upon the reasoning of *State* v. *Keeran, supra,* which the court has, whether directly voiced or not, so many times since relied in confining the application of art. I, sec. 10, to one accused of crime. *Creditors' Service Corp.* v. *Cummings,* 57 R. I. 291; *State Airport Comm'n* v. *May,* 51 R. I. 110; *Thayer Amusement Corp.* v. *Moulton,* 63 R. I. 182; *Haigh* v. *State Board of Hairdressing,* 76 R. I. 512; *Joslin Mfg. Co.* v. *Clarke,* 41 R. I. 350; *East Shore Land Co.* v.

*Peckham,* 33 R. I. 541. A tangential attack against *Keeran* in these causes on the thesis that the *Reynolds* line of cases is the law today cannot succeed.

The cogency of the reasoning and the result in *Keeran* must, however, be viewed in historical context and with an awareness that the decision preceded the adoption of the fourteenth amendment to the federal constitution. At a time when a constitutional convention sits with full power to recommend changes in our organic law to the electors, and on this limited challenge and in causes which are susceptible of identical resolution on fourteenth amendment grounds, we are not disposed to depart from the settled rule that section 10 of our Declaration of Rights applies only to the rights of persons accused in criminal prosecutions.

The safeguards of art. I, sec. 10, being available only to one accused of crime and these proceedings being equitable rather than penal in nature, no rights of respondents under our due process clause are in danger of violation, and this notwithstanding that the Act contains penal sanctions as well as the provisions for injunctive relief here availed of by complainant. *Ajootian* v. *Housing Board of Review,* 98 R. I. 370, 201 A.2d 905; *Kane* v. *Lapre,* 69 R. I. 330. In the circumstances, any determination of the possible repugnancy to our due process clause of so much of the Act as relates to one accused of crime is irrelevant and not indispensably necessary to a resolution of the decisive issues in these causes and for that reason questions 4, 5 and 6 will not be answered by us. *Blais* v. *Franklin,* 30 R. I. 413; *State* v. *Church,* 48 R. I. 265; *Creditors' Service Corp.* v. *Cummings, supra.* We turn then to the questions relating to the federal constitution.

## THE POLICE POWER

The first question is whether the Act constitutes an unwarranted exercise of the police power and is thereby violative of the due process clause of the fourteenth amend-

ment to the federal constitution. Whether the permissible bounds in this area have been exceeded is determinable not by the wisdom, effectiveness, or economic or social desirability of the legislation, but by its legitimate and substantial relationship to the public health, safety, morals, or general welfare. If it meets the relationship test, it falls within that class of legislation which is within the power of the legislature to enact and is valid. *United States Time Corp.* v. *Ann & Hope Factory Outlet, Inc.*, 98 R. I. 503, 205 A.2d 125; *Amitrano* v. *Barbaro*, 61 R. I. 424; *Prata Undertaking Co.* v. *State Board of Embalming & Funeral Directing*, 55 R. I. 454.

At common law every merchant was free to sell his merchandise at prices of his own selection, but the laissez-faire economic and social philosophy under which that freedom from restrictions on resale prices flourished is of the past, and it has long been accepted that the liberty of the free market can be interfered with by the legislature so long as the infringement on the freedom to fix prices is reasonably related to a valid exercise of the police power. If the exercise of that power is in the interests of the public health, safety, morals or general welfare, then the legislation is valid; if unreasonable, arbitrary or capricious, invalid. *Nebbia* v. *State of New York*, 291 U. S. 502. In the area of Unfair Sales Acts, the test adopted by the courts turns on whether the legislative intent motivating enactment was the prevention of unfair competition.

Although our Act contains no statement of the general purposes which led to its adoption, it is clear that the evil with which the legislature was concerned was the prevention of unfair competition and in the accomplishment of that purpose it elected to prohibit the selling or offering or advertising to sell at below cost. That purpose is evidenced both in §6-13-3 where what is made subject to criminal prosecution is only such advertisement, sale or offer to

sell which occurs with "intent to injure competitors or destroy competition" and in §6-13-6 where the actions enjoinable are those forbidden or declared illegal in §6-13-3. Statutes so purposed have almost with unanimity been held within the legitimate scope of the police power. The authorities are collected at 2 CCH Trade Reg. Rep. ¶6629 and need not be individually cited.

The respondents have advanced no persuasive argument as to why we should depart from the widely-accepted rule. Indeed, they cite no decision nor have we found any in our own research where a statute which included as a prerequisite either to criminal punishment or equitable relief an intention of the seller to injure competitors or destroy competition was held void as constituting an invalid exercise of the legislative power. The decisions from the states of New Jersey and Pennsylvania upon which respondents rely are clearly distinguishable. The statutes in those states which were held defective prohibited sales below cost irrespective of the seller's intent and it was the absence of such a requirement upon which the decisions in those states hinge. Thus in *State* v. *Packard-Bamberger & Co.,* 123 N.J.L. 180, 185, the legislation was not limited to transactions which, in the words of the court, were "designed to injure competitors or destroy competition," but rather contained "an absolute prohibition of 'sale below cost,' with punishment therefor, regardless of intent, purpose, or effect upon fair trade." And in *Commonwealth* v. *Zasloff,* 338 Pa. 457, while holding unconstitutional on denial of due process grounds a penal statute which without qualification prohibited the selling of merchandise below cost, the court not only observed at page 459 that the Unfair Sales Acts of most states differed from that in Pennsylvania in that "instead of a general prohibition of sales below cost, they forbid such transactions only when engaged in for the purpose of destroying competition, injuring competitors, deceiving or misleading customers, or creating a monopoly,"

but went on to say at page 461 that: "If the Act confined itself to prohibiting sales below cost when intended to destroy competition, it would undoubtedly be valid, as has been held in various jurisdictions where such acts have been enacted with that qualification * * *."

In our judgment our Act requiring as it does proof of an intent to injure competitors or destroy competition makes it referable to the health, safety, morals or general welfare and therefore within the legitimate exercise of the authority. We therefore answer the first question in the negative.

## CREATION AND REMOVAL OF PRESUMPTIONS

We turn now to the second question where we are asked whether §6-13-4 violates the due process clause of the fourteenth amendment to the federal constitution. That section reads as follows:

> "Evidence of any advertisement, offer to sell or sale of any item of merchandise by any retailer or wholesaler at less than cost to him, as herein defined, shall be prima facie evidence of intent to injure competitors or destroy competition."

The specific question is whether there is a constitutional repugnancy by reason of the legislative creation of a presumption of guilt and a consequent removal of the presumption of innocence of an accused person.

The question as phrased relates to whether the statutory declaration that evidence of the forbidden act shall constitute prima facie evidence of the requisite intent results in a violation of those basic principles of the criminal law which impose upon the state the burden of proving a crime beyond a reasonable doubt and endow an accused with a presumption of innocence until proof of his guilt shall have been established. It is concerned solely with the constitutional rights obtaining in criminal proceedings and it is neither germane nor is its resolution indispensably neces-

sary to a determination of these causes which are equitable in nature. *Lonsdale Co.* v. *City of Providence,* 63 R. I. 28; *State* v. *Smith,* 56 R. I. 168.

The rule of germaneness and indispensable necessity, although laid down in cases certified to us under what is now §9-24-27, applies equally to those certified under §9-24-26 for we follow the same rules in determining the propriety of the certification under either section. *Rhode Island Hospital Trust Co.* v. *Davis,* 68 R. I. 461, 464.

It is of no assistance to respondents to argue that the question might have been framed in such a manner as to endow it with relevance in these proceedings, or that we should consider whether in equitable proceedings under the Act a constitutional question exists as to the natural and rational connection between proof of a sale at less than cost and the establishment thereby of a prima facie case as to the required intent which would make the act enjoinable. That is not the question put to us. Simply put, we are asked to determine whether the prima facie nature of the case established by proof of a sale at less than cost violates the constitutional rights of an accused in a criminal proceeding. Such a question is unrelated to a proceeding for equitable relief. It is not germane or indispensably necessary to a determination in these proceedings and will therefore not be answered.

## VAGUENESS AND UNCERTAINTY

The final question relates to whether the Act is invalid by reason of the vagueness, generality and indefiniteness of §6-13-1 (d) which provides that:

"The terms 'cost to the retailer' and 'cost to the wholesaler' as defined in paragraphs (a) and (b) shall mean bona fide costs; and sales to consumers, retailers and wholesalers at prices which cannot be justified by existing market conditions within this state shall not be used as a basis for computing replacement costs with respect to sales by retailers and wholesalers * * *."

Our discussion of this question will relate only to such portion of the section as concerns "cost to the retailer" since here it is retailers who are respondents.

. The Act in §6-13-1 (a) prescribes a formula for the calculation of cost by the retailer. Starting with the invoice price or replacement cost of the merchandise to him within thirty days prior to the sale, whichever is lower, less all trade discounts except customary discounts for cash, the retailer adds (1) freight charges not otherwise included in the merchandise cost; (2) cartage to the retail outlet if performed or paid for by him which cost is deemed to be three-fourths of one per cent of the cost of the merchandise, unless a lower cost is claimed and proved; and (3) a markup to cover in part the cost of doing business, which markup in the absence of proof of a lesser cost is deemed to be six per cent of the total cost at the retail outlet.

After calculating his cost as prescribed by the detailed formula above set forth, the retailer is then required by §6-13-1 (d) to recompute and to exclude from replacement cost any sales to consumers, retailers, and wholesalers "which cannot be justified by existing market conditions within this state * * *."

The provision at issue has several times been passed on by the courts and where its constitutionality was challenged on the grounds of vagueness, generality, and indefiniteness it has on each occasion been held void. *McIntire* v. *Borofsky,* 95 N. H. 174; *Daniel Loughran Co.* v. *Lord Baltimore Candy & Tobacco Co.,* 178 Md. 38; *State* v. *Walgreen Drug Co.,* 57 Ariz. 308; *State* v. *Consumers Warehouse Market, Inc.,* 183 Kan. 502.

In reaching a like conclusion, we can add nothing to the observations of the Maryland court in *Blum* v. *Engelman,* 190 Md. 109, where summarizing its earlier discussion in. *Daniel Loughran Co., supra,* of a provision similar to that before us, the court said at page 112:

"The 1939 Act was annulled on account of two provisions. One of these provisions was to the effect that sales 'at prices which cannot be justified by existing market conditions' should not be used as a basis for computing costs. * * * This provision required a dealer to make a survey of 'existing market conditions,' and thereupon determine whether such conditions justified a certain price, and from that price the cost was to be computed. The dealer's computation was not conclusive, and accordingly if his analysis of 'existing market conditions' was not correct, and it was determined in a judicial proceeding that the conditions did not justify the price, then, even though he honestly believed that his survey justified that price, his computation would be rejected, and he would stand as a violator of the law."

In our judgment, the provision lacks that degree of reasonable certainty which it was incumbent upon the legislature to provide when it prohibited sales below cost, and we hold that such vagueness, uncertainty and indefiniteness make it defective.

We are not unaware that in *Rust* v. *Griggs*, 172 Tenn. 565, a similar clause was held constitutional, but in that case the challenge was on the ground of a violation of the interstate commerce rather than the due process clause, and we are also mindful that in *Blum* v. *Engelman, supra,* a like conclusion was reached as to the Maryland Act, but only after it had been amended by the elimination of the existing market conditions clause held defective in *Daniel Loughran Co., supra.*

That we hold the clause in question void is not, however, fatal to the remaining portions of the Act, the invalid existing market conditions provision being clearly separable from the remainder which in §6-13-8 the legislature stipulated "shall not be affected thereby."

We answer question numbered 3 in the negative.

The papers in the cases with our answers to the questions certified are remitted to the superior court for further proceedings.

*Coleman B. Zimmerman, Sidney L. Rabinowitz, Martin L. Greenwald,* for complainant.

*Armstrong, Gibbons & Lodge, Walter F. Gibbons, Joseph G. Kinder,* for Almac's Inc.

*Adelson & Chernick, Joseph E. Adelson, Melvin Chernick, Sherin & Lodgen, George Lodgen* (Boston, Massachusetts), for Stop & Shop, Inc., of R. I.

*Alvin N. Biener,* for The Big G. Supermarkets, Inc.

*Waldman & Waldman, Maxwell W. Waldman,* for Nyanza Mills Outlet Co.

*Coffey, Ward, McGovern & Novogroski, John G. Coffey, Charles J. McGovern,* for First National Stores, Inc.

*Graham, Reid, Ewing & Stapleton, Robert A. Mercer, Eustace T. Pliakas, Edward J. Regan,* for United Public Markets, Inc., respondents.

*William C. Hillman,* amicus curiae in support of complainant.

*Edwards & Angell, James K. Edwards, Ronald R. Lagueux, Paul J. Choquette, Jr.,* amicus curiae in support of constitutionality of Unfair Sales Practices Act.