371 A.2d 1053.
MICHAEL BERGER *d.b.a.*
NEWPORT SCHOOL OF HAIRDRESSING *vs.*
STATE BOARD OF HAIRDRESSING *et al.*

APRIL 7, 1977.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

56

KELLEHER, J. This is a declaratory judgment action in which the plaintiff (Berger) has asked the Superior Court to rule that a certain portion of G.L. 1956 (1976 Reenactment) ch. 10 of title 5 is unconstitutional. The defendant State Board of Hairdressing (the board) took a contrary view; a Superior Court justice, after being presented with an agreed statement of facts, ruled in favor of the board, and Berger initiated this appeal.

Chapter 10 of title 5 concerns itself with the licensing and regulation of hairdressers, cosmeticians and manicurists. The statute in issue is §5-10-17(7), specifically that portion which, in essence, bars an approved school which teaches the art of hairdressing and cosmetic therapy or its students from charging or receiving a fee, either directly or indirectly, for the "* * * supplies used on any person acting as a subject for student instruction and training."

Berger owns and operates a duly licensed hairdressing school. In conducting his business he does not charge any fee for the services rendered by his students to those who serve as models at the school.[1] He does, however, charge a reasonable sum for the equipment and materials used by the students in rendering their services. The board notified Berger that this practice was in violation of §5-10-17(7) and that if it continued, legal action would be taken against him. If Berger persists in charging for the use of his equipment and supplies, he runs the risk of having his license revoked as well as being fined and/or incarcerated. The maximum fine is $200, and the maximum term of imprisonment is 3 months. Section 5-10-30.

Before proceeding to the merits of this controversy, we should point out that the constitutionality of the prohibition against charging of fees for services rendered has

---

[1] There is a portion of §5-10-17(7) which prohibits the charging of a fee for services rendered.

been expressly upheld by this court as a proper exercise of the police power. *State* v. *Conragan*, 54 R.I. 256, 171 A. 326 (1934).[2] In *Conragan* the operators of a barber school attacked a similar fee-prohibition statute as violative of the due process portion of the fourteenth amendment to the Federal Constitution and art. I, §10, of the Rhode Island Constitution.[3] This court, in upholding that statute, noted: "Students in a school are prohibited from barbering for compensation. The proprietor of a barber school has no more right to receive compensation for the service performed by a student than has the student. The statutory provision to which objection is made is reasonable and is necessary to insure to the public protection

----

[2] Although there is a split of authority concerning the constitutionality of such statutes, the more recent cases are in accord with our holding in *State* v. *Conragan*, 54 R.I. 256, 171 A. 326 (1934). *Maine Beauty Schools, Inc.* v. *State Bd. of Hairdressers*, 225 A.2d 424 (Me. 1967); *Salisbury Beauty Schools* v. *State Bd. of Cosmetologists*, 268 Md. 32, 300 A.2d 367 (1973); *Schwarze* v. *Clark*, 188 Okla. 217, 107 P.2d 1018 (1940); *contra, State ex rel. Mitchell* v. *Thompson's School of Beauty Culture*, 226 Iowa 556, 285 N.W. 133 (1939); *Moler* v. *Whisman*, 243 Mo. 571, 147 S.W. 985 (1912). *See also* Annot., 56 A.L.R.2d 879 (1957), for a detailed discussion of this and other questions relating to barber and hairdressing schools.

[3] On previous occasions we have noted that the due process clause of Rhode Island's Constitution, which is to be found in art. I, §10, applies only to an accused in a criminal proceeding and that it affords no protection in a civil case. *Twomey* v. *Carlton House of Providence, Inc.*, 113 R.I. 264, 271, 320 A.2d 98, 101 (1974); *Avella* v. *Almac's, Inc.*, 100 R.I. 95, 99-102, 211 A.2d 665, 669-70 (1965). Berger bases his constitutional claim on the due process portion of the fourteenth amendment and art. I, §2, of the state Constitution. Section 2 provides: "All free governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens." This court on innumerable occasions has observed that art. I, §2, is purely advisory and does not amount to a constitutional restraint on the General Assembly's legislative power. Accordingly, Berger's constitutional claim must be based solely on his federal due process rights.

from untrained and unauthorized barbers." *State* v. *Conragan, supra* at 259, 171 A. at 327.

It is clear that the businesses of barbering and hair-dressing are subject to reasonable regulation by the state under its police power. *Amitrano* v. *Barbaro*, 61 R.I. 424, 1 A.2d 109 (1938); *State* v. *Conragan, supra; State* v. *Armeno*, 29 R.I. 431, 72 A. 216 (1909). The business of hair-dressing affects the public health, and it is well within the exercise of the police power to protect the public from untrained and unlicensed practitioners as well as to insure that safe and sanitary conditions exist in such establishments. *Amitrano* v. *Barbaro, supra; State* v. *Conragan, supra.*

However, it is also clear that the police power of the state is not without limitation. *Avella* v. *Almac's Inc.*, 100 R.I. 95, 211 A.2d 665 (1965); *United States Time Corp.* v. *Ann & Hope Factory Outlet, Inc.*, 98 R.I. 503, 205 A.2d 125 (1964). The police power "* * * must be exercised in such a way as to bear a real and substantial relation to public health, safety, morals or general welfare, in connection with the subject being dealt with." *Amitrano* v. *Barbaro, supra* at 428, 1 A.2d at 111. *Accord, Haigh* v. *State Bd. of Hairdressing*, 76 R.I. 512, 72 A.2d 674 (1950); *State* v. *Conragan, supra.* If such statute does not bear a reasonable relation to the subject being dealt with, it is arbitrary and unreasonable and, accordingly, runs afoul of the fourteenth amendment guarantee of due process. *Avella* v. *Almac's Inc., supra; State* v. *Guyette*, 81 R.I. 281, 102 A.2d 446 (1954). Thus, we are not concerned with the wisdom, effectiveness, or economic or social desirability of the legislation, but our inquiry is directed solely to the question of whether the bar against charging for the cost of equipment and materials bears a "legitimate and substantial relationship" to the public health, safety, morals or general welfare. *Avella* v. *Almac's Inc., supra* at

103, 211 A.2d at 670. It is fundamental that an act of the Legislature will command judicial approval if, upon any reasonable view, it can be said that the act protects the public health, safety and welfare. *State ex rel. Colvin* v. *Lombardi*, 104 R.I. 28, 241 A.2d 625 (1968).

As we have noted, those public health aspects of hairdressing which permit governmental regulation are the protection of the public from the ministrations of unlicensed hairdressers and the assurance that a hairdressing school will not be a breeding place for all sorts of threats to one's health. Consequently, if the statutory mandate in question bears a legitimate relationship to the furtherance of either of these goals, it must be upheld. There are few cases that directly or tangentially deal with the specific question now before us.

In *Mansfield Beauty Academy, Inc.* v. *Board of Regisration of Hairdressers*, 326 Mass. 624, 96 N.E.2d 145 (1951), the Supreme Judicial Court of Massachusetts struck down a statutory provision prohibiting a hairdressing school from charging for materials used by the students in rendering their service. The court noted that the collection of such charges would allow the student access to the "standard" rather than "inferior" brands of hair products. *Id.* at 626, 96 N.E.2d at 146. Indeed, such charges seemingly would tend to promote the public health by insuring the use of safe, tested products, whereas the prohibition of such charges "* * * has no rational or reasonable bearing on cleanliness, sanitation, or the prevention of communicable diseases." *Id.* at 627, 96 N.E.2d at 146-47. We find this observation persuasive at least insofar as Berger's claim that the Rhode Island proviso bears no legitimate relationship to the guarantee of safe and sanitary conditions within the school.

Our determination in this regard is buttressed by *Brasier* v. *State Bd. of Barber Examiners*, 193 Okla. 74, 141 P.2d

563 (1943).[4] In *Brasier,* the court struck down a rule promulgated by the board prohibiting the collection of cost of materials used by barbers. The court, after noting the dual objectives of skilled barbers and sanitary conditions as affecting the public health, stated: "Any rule having a reasonable tendency to accomplish either of these ends would unquestionably be valid. There seems to be, however, no rational connection between these ends and the denial of the right to make the five cent [cost of material] charge." *Brasier* v. *State Bd. of Barber Examiners, supra* at 76, 141 P.2d at 565. *Accord, Philadelphia School of Beauty Culture* v. *State Bd. of Cosmetology,* 78 Pa. D.&C. 111, 124 (1951).

The board, however, claims that there is a rational connection between the prohibition of material charges and the protection of the public from unlicensed barbers.[5] They argue that the collection of a material charge may dissuade models from coming to the school. Thus, the student will have fewer brave souls upon whom to practice in order to become proficient in his profession. Even conceding that the number of potential models may decrease, we fail to see how this fact relates to the prevention of unlicensed hairdressers. The student still needs 225 hours of instruction and practice to become licensed. Section 5-10-17(7). He or she will still have to meet this requirement prior to licensing regardless of how many or how fast models pass through the school's portals.

---

[4] Interestingly, 3 years earlier the Oklahoma court had upheld the prohibition of charging fees for the services delivered by the students. *Schwarze* v. *Clark,* 188 Okla. 217, 107 P.2d 1018 (1940).

[5] Two of its arguments dealing with indirect compensation to the student and violation of the minimum wage law have been adequately discussed in *Brasier* v. *State Bd. of Barber Examiners,* 193 Okla. 74, 141 P.2d 563 (1943). We agree with that court's analysis and, therefore, see no necessity for reiterating the discussion here.

Lastly, the state argues that such charges will result in "profit-oriented" students who will use materials that are expensive rather than what is professionally correct. However, as the agreed statement of facts stipulates, the school seeks and will be allowed to collect only the reasonable cost of materials used. This fact militates against any "profit-oriented" arguments the state advances.

In light of our discussion and after taking the requisite reasonable view of the legislation, we fail to find any relationship between the prohibition of material charges and the safe-guarding of public health, safety, and general welfare. Accordingly, we find that portion of §5-10-17(7), namely, "* * * and shall furnish without charge or fee, either directly or indirectly, all supplies used on any person acting as a subject for student instruction and training" unconstitutional since it violates the due process clause of the fourteenth amendment to the United States Constitution.

The plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court with direction to enter a judgment which conforms to this opinion

Mr. Chief Justice Bevilacqua did not participate.

*Bevilacqua & Cicilline, John J. Bevilacqua,* for plaintiff.

*Julius C. Michaelson,* Attorney General, *Gregory L. Benik,* Special Asst. Attorney General, for defendants.