373 A.2d 184.

CAROLYN J. BAFFONI *vs.* STATE OF RHODE ISLAND, DEPARTMENT OF HEALTH *et al.*

MAY 13, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This is an appeal by the plaintiff from a judgment in a declaratory judgment action.[1] The plaintiff, Carolyn J. Baffoni, brought a petition for declaratory judgment and injunctive relief after her application to take the electrolysis examination in Rhode Island was denied by the Rhode Island Department of Health, Division of Professional Regulation, the department which regulates the practice of electrolysis.[2] Her application was rejected because she did not comply with the provisions of G.L. 1956, §5-32-4(4), as amended by P.L. 1969, ch. 166, §1, which provides that certificates to engage in the practice of electrolysis "shall be issued to such applicants as comply with the following requirements":

> "4. Shall have satisfactorily completed a course of training and study in electrolysis as a registered apprentice under the supervision of a duly licensed Rhode Island electrologist who is qualified to teach electrolysis to apprentices as set forth in §5-32-17 of this chapter. And such apprenticeship shall include at least six hundred and fifty (650) hours of study and practice in the theory and practical application of electrolysis within a term of nine (9) months; provided, however, such apprentice shall register with said division upon beginning his course of instruction

---

[1] The petition for declaratory judgment was filed pursuant to the provisions of G.L. 1956 (1969 Reenactment) ch. 30 of title 9, our Uniform Declaratory Judgments Act.

[2] Electrolysis is defined in G.L. 1956, §5-32-1, as amended by P.L. 1969, ch. 166, §1, as the method of removing body hair by the application of an electrical current to the hair-papilla.

and the licensed person with whom he shall serve such apprenticeship shall keep a record of the hours of such instruction and upon the completion of such apprenticeship shall so certify to said board."

The action was heard before a justice of the Superior Court on the following agreed statement of facts. On September 3, 1973, plaintiff, a resident of this state, enrolled as a student in the Hair Removal Training Center in Chicago, Illinois, which is a duly licensed training school in that state. As of December 22, 1973, she completed 694 hours of the course and passed her examination with an average of 98.5 and was certified as a fully qualified operator, trichologist, in the field of permanent hair removal. She paid tuition of $4,000 for her training at the Chicago Training Center. On February 1, 1974, she received notification from defendants that she was ineligible to take the examination for a certificate to practice electrolysis in this state because she had not complied with the provisions of §5-32-4(4).

The plaintiff argued in the Superior Court, as she does here, that §5-32-4(4) is unconstitutional and void because it represents an abuse of the state's police power since it does not bear a "real and substantial" relationship to the general health, safety, and welfare of the public. She also argues that the statute deprives her, without due process of law, of the right to take the examination and to engage in a lawful occupation for which she is well-fitted.[3]

The trial justice held that §5-32-4(4) had a substantial relation to the public health and safety and therefore was not arbitrary and unreasonable. He concluded that the statute constituted a valid exercise of the police power and was therefore constitutionally valid.

---

[3] In her petition the plaintiff also alleged a violation of her equal protection rights but since she has not adequately briefed this issue we shall deem it waived.

The plaintiff challenges the constitutionality of §5-32-4(4) on two grounds that more of less merge with each other. First, she argues that the section represents an abuse of the state's police power in that conditions for taking the examination are more stringent than the general health, safety, and welfare of the public require and in fact are designed to exclude otherwise qualified individuals for the benefit of electrologists already practicing in Rhode Island.

Second, she argues that §5-32-4(4) is arbitrary, capricious and discriminatory and thus denies her the right to engage in a lawful occupation without due process. She contends that the section is arbitrary because it requires her to repeat her training, is not in the public interest, and is designed for the advantage of those persons already in the profession. It is also capricious and discriminatory, she argues, because the exclusion of competent individuals from taking the test unless they have trained under a Rhode Island electrologist has no relation to permissible police power objectives.

The Department of Health responds that this court has the authority only to determine if the statutory scheme is a reasonable exercise of the police power. Here, the department argues, the General Assembly has chosen a rational and thus constitutional method of regulation and any question as to whether another method would be preferable must be resolved in the Legislature, not the courts.

Insofar as plaintiff can be understood to argue that this type of regulation is beyond the police power of the state, she is clearly incorrect. By the very nature of the process, electrolysis is intimately involved with the human body

and its physical functions.[4] Even more than barbering or other forms of cosmetic therapy, electrolysis is a potential hazard to the health of the person being treated. The profession is thus subject to reasonable regulation by the state under its police power. *See Berger* v. *State Bd. of Hairdressing,* 118 R.I. 55, 371 A.2d 1053 (1977); *State* v. *Conragan,* 54 R.I. 256, 171 A. 326 (1934). Under the police power, the state has the authority to take measures to protect the public from improperly trained electrologists, from unsafe and unsanitary procedures, and from the possible spread of contagious skin diseases. *Berger* v. *State Bd. of Hairdressing; State* v. *Conragan,* both *supra; Minnesota Bd. of Barber Examiners* v. *Laurance,* 300 Minn. 203, 218 N.W.2d 692 (1974). Such measures can include regulating the training of preprofessionals and establishing educational standards for entry into the profession. *Lee* v. *Delmont,* 228 Minn. 101, 36 N.W.2d 530 (1949); *see also Annot.,* 56 A.L.R.2d 879, 898, 1901 (1957) for a collection of cases upholding state approval of barber and cosmetology schools and regulation of teachers and courses of study.

This power to regulate, though necessarily broad, is not without limitation, however. It must be exercised within the bounds established by our Federal Constitution, including the requirement that liberty and property not be taken from a person unless due process of law is accorded him. *Avella* v. *Almac's Inc.,* 100 R.I. 95, 211 A.2d 665 (1965); *see also Creditors' Service Corp.* v. *Cummings,* 57 R.I. 291, 190 A. 2 (1937).

Our duty to review statutes which are attacked as denying due process does not include deciding if the particular regulation is in the public interest, nor does it include

---

[4]For descriptions of the actual process of electrolysis, see *People* v. *Cohen,* 255 App. Div. 485, 486, 8 N.Y.S.2d 70, 71-72 (1938) and *People* v. *Lehrman,* 251 App. Div. 451, 452, 296 N.Y.S. 580, 581 (1937).

deciding whether an alternative method of regulation would be preferable. These decisions are for the Legislature to make, not the judiciary. *Morrison* v. *Lamarre*, 75 R.I. 176, 185-87, 65 A.2d 217, 222-23 (1949); *Williamson* v. *Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487-88, 75 S.Ct. 461, 464-65, 99 L.Ed. 563, 571-72 (1955).

Our inquiry is limited solely to determining whether the statutory scheme is reasonable, that is, whether the regulation at issue bears a real and substantial relationship to protecting the public from poorly trained practitioners and improper procedures in electrolysis. *See, Avella* v. *Almac's Inc., supra* at 103, 211 A.2d at 670; *Nebbia* v. *New York,* 291 U.S. 502, 525, 54 S.Ct. 505, 510-11, 78 L.Ed. 940, 950 (1934).

The statute comes before us with a presumption that the General Assembly in enacting the legislation and the Governor in signing it acted in a constitutionally permissible manner. *Malinou* v. *Board of Elections,* 108 R.I. 20, 25, 271 A.2d 798, 800 (1970), *appeal dismissed,* 401 U.S. 986, 91 S.Ct. 1234, 28 L.Ed.2d 527 (1971); *see also, Creditors' Service Corp.* v. *Cummings, supra* at 299, 190 A. at 8. If under any reasonable state of known or assumed facts, the challenged provision can be said to protect the public health, safety, or welfare, then the statute must be upheld. *State* v. *Lombardi,* 104 R.I. 28, 31, 241 A.2d 625, 627 (1968); *accord, Berger* v. *State Bd. of Hairdressing, supra.*

According to §5-32-4(4), plaintiff must serve a 650-hour apprenticeship covering the same material which she has already studied for 694 hours. This complete repetition is required not because her knowledge is or even may be deficient but because the source of her knowledge was an out-of-state school. We have not been shown a reasonable basis for this regulation and we find it impossible to

imagine a reasonable set of assumed facts which would justify this particular bar to plaintiff's certification.

Conceivably one might assume, in support of this statute, that the practice and training of electrolysis in other states is inferior to that in Rhode Island, but not only is that hardly a reasonable assumption, it is also belied by the electrolysis statute itself. Section 5-32-7 allows electrologists already licensed in other states to take the Rhode Island examination and be certified as long as the particular state has requirements for licensing equivalent to Rhode Island's.

Another possible assumption is that the Legislature believed the Department of Health would be unable to evaluate adequately the training obtained outside of Rhode Island. Again, this assumption is belied by §5-32-7 which allows certification of electrologists certified in other states "where the requirements are the equivalent of those of this state." Thus the Legislature evidently believes that the department can adequately judge the quality of out-of-state training.

The department argues that the statute does not prevent licensed Rhode Island instructors from teaching at institutions outside of Rhode Island and therefore the statute is a reasonable method of regulation. We have some doubt as to the validity of this suggestion because §5-32-4(4) requires training by a duly licensed *Rhode Island* electrologist and to be duly licensed, an electrologist must be a Rhode Island resident. Furthermore, §5-32-17 prohibits an instructor from taking more than one apprentice in a 9-month period. Assuming the department's contention is true, however, we see no real and substantial relation between the public health, safety, and welfare and the requirement that no matter where a person receives his training, it must be under the guidance of a Rhode Island electrologist.

It should be noted also that this statute does not establish a clerkship or internship requirement such as the legal and medical professions have. Instead, it requires that a person receive his entire training under a Rhode Island electrologist before being allowed to practice in this state. This requirement is no more reasonable than would be one providing that only graduates of Rhode Island medical or law schools could be certified to practice their professions in Rhode Island.

After considering the possible objectives of this regulatory scheme, we can see no relation between the knowledge necessary to practice electrolysis and the location at which the knowledge is obtained. Because we are unable to establish any set of facts which would show that §5-32-4(4) is a reasonable exercise of the police power, we are constrained to determine that the requirement of training by a Rhode Island electrologist is arbitrary and unreasonable and hence is void as denying without due process plaintiff's right to engage in a lawful occupation. *Pavone* v. *Louisiana State Bd. of Barber Examiners,* 364 F. Supp. 961 (E.D.La. 1973), *aff'd per curiam,* 505 F.2d 1022 (5th Cir. 1974).[5]

In view of the comprehensive plan of regulation embodied in the electrolysis statute, we believe the requirement in §5-32-4(4) of Rhode Island training is not indispensable to the rest of the Act and can be severed without destroying the Legislature's purpose and intent. *Chartier Real Estate Co.* v. *Chafee,* 101 R.I. 544, 556, 225 A.

[5]At oral argument, our attention was directed to the recent case of *City of New Orleans* v. *Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 449 L.Ed.2d 511 (1976), in which the Supreme Court upheld the city's prohibition against pushcart vendors and its grandfather clause allowing two vendors to remain in business. Because that case was decided on equal protection grounds, we consider it inapposite to the case before us. See note 3, *supra.*

2d 766, 773 (1967); *Kalian* v. *Langton,* 96 R.I. 367, 378, 192 A.2d 12, 18 (1963); *Affiliated Distillers Brands Corp.* v. *Sills,* 56 N.J. 251, 265, 265 A.2d 809, 816-17 (1970). We therefore hold only the one particular restriction at issue to be void as unconstitutional.

The plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings in conformity with this opinion.

Mr. Chief Justice Bevilacqua did not participate.

Mr. Justice Kelleher, dissenting. I do not dispute the constitutional principles cited in the majority opinion, particularly the observation that our inquiry is limited solely to determining whether §5-32-4(4) "bears a real and substantial relationship to protecting the public from poorly trained practitioners and improper procedures in electrolysis." 118 R.I. at 233, 373 A.2d at 188. My disagreement is with the majority's conclusion.

Section 5-32-4(4) carries with it a presumption of constitutionality, and, in my opinion, it does bear a reasonable relationship to the protection of the public health. An electrologist removes excess hair by the use of electrified needles. It is obvious that an electrified needle in the hands of a poorly trained electrologist poses a substantial threat to the well-being of his or her clientele.

While the quality of hair-removal instruction might be a matter of some concern for the State of Illinois, when an unlicensed individual schooled in Illinois seeks a license to practice electrology here, it becomes a matter of great concern for the State of Rhode Island. The state has expressed its concern in the form of §5-32-4(4). Clearly, the General Assembly might have accommodated the out-of-state students by transferring those course credits earned elsewhere to their Rhode Island tally. It chose not

to do so. The majority has. However, the Legislature's failure to do so does not automatically render its alternative unconstitutional. Hardships to the applicant aside, the alternative, in fact, bears a real and substantial relation to the protection of the public from poorly trained practitioners. Our concern is with constitutionality, not with legislative wisdom. It is my belief that on this record the plaintiff has failed to overcome the presumption of constitutionality.

*Bevilacqua & Cicilline, John J. Bevilacqua,* for plaintiff.

*Julius C. Michaelson,* Attorney General, *J. Peter Doherty,* Special Asst. Attorney General, for defendants.